Woodworth, J.
The will of the testator declares, that if he left any child alive at the time of his death, the executors should receive the rents and profits for the benefit of süch child, until it should attain the age of 21 years or marry.
The next clause devises the rest and residue of the real and personal estate to the respondents, to take effect immediately after debts and legacies are paid, if the testator should leave ño child; and if he should leave a child, then upon the death, marriage, or attaining of 21 years of age of such child.
From this statement, it is evident that had there been no child, the devise was direct to the respondents; and in that event, it was undoubtedly intended they should take immediately. But there was a child; and consequently no és *529 tate passed to the respondents at the death of the testator. The latter part of the preceding clause is to be taken in connection with that giving the rents and profits, to the child if any was left, inasmuch as the executors were to apply the rents and profits, until marriage or 21 years of age. The testator suspended the vesting of the estate in the respondents until the happening of e.ither of those events. Upon the contingency taking place, the devise is direct to the respondents.
Thus far the intent is plainbut it will be observed that the will had not yet declared in whom the legal estate should be vested from and after the.death of the testator, until the death, marriage, or lawful age of the child that might be left. As the executors were to receive the rents and profits if the contingency contemplated should happen, it was advisable to give them the legal estate during the continuance of this trust; and accordingly we find that the next clause in the will makes such a provision. It devises to the executors all the real estate subject to the trust aforesaid. This manifestly refers to such trusts as the executors were to perform. What are they 1 No other trusts were imposed on them, excepting that they should apply the rents and profits for the benefit of the child, in the manner the testator had designated. , *They did not hold the real estate in trust for the respondents, to be conveyed to them on the happening of a certain event, for this (to my mind) conclusive reason ; there was no necessity that they should hold for the respondents, because the testator had declared.that, on a certain contingency, the estate should go to the respondents. That event has happened ; and, therefore, by force of the will, (if they are capable of taking,) they took the legal estate directly. They needed not the aid of trustees to pass this estate to them. I consider their title as accruing independent of any act or thing to be done by the tras tees.
Then follows a further direction, which is somewhat at variance with the disposition made before. The testator proceeds to declare that when the child shall attain 21 years, or marry, his real estate should be sold by the *530 executors, and one half of the proceeds to be paid to such child. Now upon the established principle of collecting the intent from the whole will taken together, and reconciling discordant parts with each other, the question arises, what is the effect of this clause ? In the first place, I think it must be conceded that it clothes the executors with an additional trust. In a certain event they are to sell, and pay half the proceeds to the child. How is this clause to operate upon the preceding devise, which declares that on the death, marriage, or attainment of 21 years by the child, the respondents are to take all the real and personal estate ? They cannot stand together. I think the effect of the last clause is, to qualify and diminish the quantum of interest which had before been given to the respondents, provided the child married, or attained 21 years. Instead of the whole, which the words of the preceding ,part give, the testator has, in the conclusion, declared that his child shall receive half. This, then, operates as a diminution of the respondent’s interest pro tanto. It also changes the manner of conferring on them the testator’s bounty. Under the first clause, the estate, such as it was, would pass to them. Under the latter, they are restricted to one half; and as the executors were to sell the estate, had the contingency happened, then and in that case their claim would be for half of the money, not-half of the land. Upon the *supposition that the child had lived to 21 or married, I admit that the legal estate would have remained in the executors, until they had performed the trusts before specified ; and had they refused to pay one half of the proceeds of the sale, the respondents would be entitled to relief. Such are my views as to the construction of this will. If they are correct, then it follows that, as the testator left a child, the estate did not vest in the respondents at his death ; but it vested in the executors subject to the trusts I have mentioned; and such estate so vested in the executors, ceased on the death of the child. The objects for which it was created then ceased. There were no rents or profits to receive for the benefit of the child, nor could there be a sale of the *531 estate. The death of the child was an event which deprived the executors of all further power or control over the real estate, and vested it in the respondents. If so, the estate was devised to them directly.
If the construction given is not erroneous it is a conceded point that the devise is void by reason of the exception in the statute of wills, unless the authority to purchase, given by the act incorporating respondents, includes the right to take by devise ; which forms the remaining point in this cause.
It is a well settled rule, that where there is a discrepancy or disagreement between two statutes, such exposition should be made as that both may stand together. In the present case, there is no express authority in the act of incorporation to take by devise ; but it is contended that the term purchase includes devise, as well as an actual purchase for valuable consideration. If it be admitted that such is the legal import of the term, it appears to me that does not decide the question. The inquiry is, ought the term to be construed in its most comprehensive sense, when, by so doing, the effect is to repeal the express words of a prior statute ? or in a more limited sense, according to the popular acceptation; thus leaving the former act unimpaired ?
It is laid down in 19 Vin. Abr, 525, pl, 132, that repeals by implication are things disfavored by the law, and never allowed of but where inconsistency and repugnancy are plain *and unavoidable; “for these repeals carry along with them a tacit reflection upon the legislators, that they should ignorantly, and without knowing it, make one act repugnant to and inconsistent with another; and such repeals have been ever interpreted so as to repeal as little of the preceding law as possible.” [1]
It is also a rule of law, that all acts in pari materia, are to be taken together as if they were one law. The statute of wills prohibits a devise to a corporation; the act incorporating the Orphan Asylum Society declares that they may *532 - Purchase ■ real estate. ¡In the-most extensive.signification ^e- word, purchase,- it • includes. a devise, and therefore relates to the subj ect which hy' the- statute of wills-, is excepted. These statutes, I apprehend-, ought to be construed - together; and-in as much as the right claimed is,-, by the'for mer statute, expressly denied, it' would-seem to .be.more congenial-to the spirit- of both -acts, to 'understand the word purchase- in a restricted sense, and as so intended by.the legislature. The-consequence of-such a construction is, that the statute of wills has full operation, and- the term purchase is confined to-such- other- modes-of'-acquiring real estate as do not--include- a devise. The legislature- may- be - considered as-granting to'this corporation the right to purchase-subject-to other existing- statutes, and not-as conferring a-right to purchase without restraint. It. cannot’be that such a clause was intended to overleap positive restrictions found in other statutes. On this principle, I do not perceive why the- statute of.frauds, or that against maintenance, may not be passed over as in effect repealed,-so far as the right claimed by this corporation is concerned. -And yet it will not be pretended that the term purchase is to be carried to that extent. If not,- what are -the grounds -upon which-the restriction rests? Manifestly these : You may purchase and hold real estate it is true ; but in making the acquisition, it must be remembered that the laws of- the • state have declared certain requisites" essentially necessary to perfects title; and in certain cases have denied.the right altogether. Whatever-*can be purchased consistently with 1 these laws, is granted; what can not is denied.
-Again; the right topurehase is-incident to-a corporation, an^ would exist if the statute had not conferred the -right, But I presume it will not be contended that this incidental right, had the act of incorporation been silent, would have authorised the corporation to take by devise. Why .then should the term purchase, when used in the act, have a more extensive signification than it -would -have’ as incidental to the power of the corporation? It-seems-to me that, in both cases the meaning of the term is the same. The act conferred no additional power in this respect. The princi *533 pal object of this clause was, to limit the amount of property the corporation was authorised to hold.
That the right to purchase in a corporation does not include the right to take by devise, appears to have been the opinion of the supreme court in the case of Jackson v. Hammond, (2 Cain. Cas. in Err. 337.) The opinion was delivered by Mr. Justice-Benson. The construction of the act of April 6th, 1784, enabling, churches to incorporate themselves, was under consideration. The act declares that the trustees appointed under it shall have good right and lawful authority to take, acquire and purchase lands, tenements and hereditaments. The expressions are as ample as in the act incorporating the Orphan Asylum Society. It is manifest, however, the court did not consider those words as conferring a right to take by devise. It was contended, that by the statute of the 6th of April, 1784, enabling churches to incorporate themselves, they are constructively, (with respect to lands possessed or held by them at the time of their incorporation,) made capable of taking by devise. The court held that the term devise in that act referred to goods and chattels, not to lands and tenements. And it may here be observed, that whether that construction was well founded or not, the term devise there used had reference only to such property as the church or congregation may have held before, and at the time of incorporation. As to future acquisitions, *the 5th section of the act regulates them in the terms I have already stated. Under that clause it was considered that a power to take by devise was not granted. It was not, it is true, the direct question before the court; but the view taken is nevertheless entitled to respect, and is of considerable weight in deciding the construction of similar words in a subsequent statute. From the scope of the opinion, I infer that the learned judge entertained no doubt on this point. He observes, “ the only manner in which, had they been incorporated, they were capable of taking, being by gift or grant, and not by deviseand again, when speaking of the construction contended for, that the word devise applied to lands which the church held before incorporation, he fur *534 ther observes, “ if this' construction is to obtain, then this consequence will follow: that the legislature must be supposed to have intended to give to a church" a capacity to hold lands' as it were before their incorporation, and refuse to them a capacity to take, and consequently to hold lands acquired after their incorporation ; and without a reason for the discrimination." It was therefore considered that, after incorporation, the corporate body could not take by devise.
I have thus very briefly given my views as to the construction of this statute ; and arrived at a conclusion that the exception in the statute- of wills is not affected by the grant of powers to the Orphan Asylum Society.
It is unnecessary for me to discuss the" various- other questions which have been examined by his honor the chancellor ; as my opinion upon the whole case rests on this ground; that, on the death of the child, the estate was devised directly to the respondents ; that after that event, there were no trusts remaining for the executors to execute, those imposed upon them by the testator having ceased; and that the devise being void by the statute of wills, the decree in the court below should be reversed.
Sutherland, J. concurred.
* Savage," Ch. J. being related to the appellant, gave no opinion.
Allen, Dayan, Elsworth, Hager, Hart, Lake, McCarty, McMartin, Waterman and Wilkeson, Senators, concurred.
Crary, Senator. (After stating the facts.) The respondents claim the whole residuary estate of the testator, The claim to the real estate is resisted, on the ground that the respondents, being a corporation, are disabled by the exception in the statute concerning wills to take by devise
By this act, it is provided, that any person having any estate in lands, may at his own free will and pleasure, give and devise the same to any person or persons, (except *535 bodies politic andcorporate,) by his last will and testament.
This exception is found m “ an act to reduce the laws concerning wills into one statute,” passed 3d of March, 1787. (See 1 Greenleaf's ed. L. 387.) At that period the people of this state could not have been jealous of colórate bodies, for very few existed. We must then look for the reason of this exception to some other cause; and as we find it in the statute of Henry 8th, it is most likely it was adopted, upon the authority of the parliament of Great Britain; and no question having arisen upon it in this state, the exception has been continued in the subsequent revisions of the laws.
If the right to dispose of real estate by will is created by statute, then the legislature may qualify the right; but if it existed before the statute, then the legislature by affirming it in one part, cannot restrain the exercise of it in another.
Sir William Blackstone says, (2 Com. 373,) “it seems sufficiently clear, that before the Conquest, lands were devisable by will. But upon the introduction of the military tenures, the restraint of devising lands naturally took place, as a branch of the feudal doctrine of non-alienation without the consent of the lord.”
Paley, in his Philosophy, (ch. 13,) says, “ since the Conquest, lands in this country could not be devised by will, till within, little more than two hundred years ago, when this *privilege was restored to the subject, by an act of parliament in the latter end of the reign of Henry the Eighth.”
Robertson, in his history of Charles the Fifth, (1 Vol. note 8 of proofs and illustrations,) says, “ the victorious troops divided the conquered lands. Whatever portion of them fell to a soldier, he seized as the recompense due to his valor, as a settlement acquired by his own sword. He took possession of it as a freeman in full property. He enjoyed it during his own life, and could dispose of it at pleasure, or transmit it as an inheritance to his children. Thus property in land became fixed. It was at the same time *536 allodial, that is, the possessor had the entire' right oi property and dominion.”
These references clearly show the right to disposé of real estate, hy will in England, previous to the statute of Henry the Eighth. And it is worthy of remark, that while this right continued, the tenure by which lands were held in England was allodial ; the precise tenure hy1 which they are held here, (a)
Thus, it would seem that the devise of the real estate for the benefit of the respondents, is not void from the testator’s incapacity to make it;' but valid at common law. 1
The next qiiestioti is, as to the ability of the respondents to take and hold real estate. That is settled by the act incorporating them, (30th sess/ p. 508/§ l,)‘tiy which" it is enacted that “ The Orphan Asylum Society in’the city of New York, by that iiamé shall he capable inlaw of" purchasing, holding and conveying, any estate, real or personal/ for the use of the said' corporation: Provided, such estate shall not exceed in valué" óñé hundred tíi&iiéand dollars.”
The value of the estate belonging to the" respondents no where áppears, and it is not to be presumed that it exceeds the amount allowed to be held by their charter.
*This act of incorporation appears to have been passed on the 7th of April/1807 ; and may be referred to for another purpose : It is the sense of the legislature, after1 the experience, under the" statute concerning wills for twenty years, that the policy of the exception in that statute was wrong", at least so far as it respected the Orphan Asylum hi the city of New York, and it1 may be questionable whether the exception is riot thus far abrogated.
*537 It was assumed in argument, that if the testator was not disabled by the exception, from devising to the Orphan Asylum, it was not in the power of the legislature to prevent devises to any corporate body, ahd to any extent; but it was not pretended that the legislature might not repeal the exception.'
The Orphan Asylum have the capacity to take and hold real estate to the amount of one hundred thousand dollars ; and are not disabled to take by devise. On what principle then can it be said they shall not take ?
Suppose the statute had provided, that the Orphan'Asylum might take by devisé; can it bé pretended that a' devise in that case would not be valid?
If the statute had enacted that the Orphan Asylum nriight take by devisé, it would have beén a limitation upon the right tó take generally; and might possibly bé considered as excluding the right to take in any other way for the right, to take and hold generally includes all the Ways and means by which propérty can- be acquired.
Which of these statutes then shall we give effect tó ? It is a familiar principle, that a new statute repeals an old one, if inconsistent with' it. In the present case, the statute concerning wills prohibits a devise to a corporate bodyand twenty years afterwards the legislature incorporate The Orphan Asylum Society in the city of New York ; and declare the society, by that name, capable in law of purchasing, holding and conveying any estate,- &c. I need- not mention that title by purchase includes that by devise.
Thus it will be séén that both statutes'may stand together and that is desirable, Whether inadvertently ór advisedlypassed.
*But there is another view of the subject, which would induce me to be in favor of affirming the decision of the chancellor.
All tenures of land granted by the péople of this state, &c., shall be and remain allodial and not feodal. (1 Rv L. 71.) (b)
*538 This act was passed before the act concerning wills.
1 Allodium, as defined by Blackstone, is the land possessed by a man in his own right, without owing any rent or service to any superior. (2 Bl. Com. 104.)
The absolute rights of each individual are the right of personal security, the right of personal liberty, and the right of private property. (3 Bl. Com. 119.)'
It is the last, that of private property, which has been invaded by the exception in the statute concerning wills.
And I now advert again to the argument, that if the devise in question is not within the exception in the act concerning wills, it is not in the power of the legislature to restrain devises to corporate bodies. And I ask why it should be ?
The very definition of municipal law limits the power of the legislature to commanding what is right, and prohibiting what is wrong.
If the legislature can restrain us as it respects our charitable donations, they may also compel us to make them; for whatever is a subject of legislation may be commanded as well as prohibited.
And if the legislature can declare a devise to the Orphan Asylum invalid, they may, upon the same principle, make us pay tithes of all we possess.
This is a free representative government; and one of the prominent features by which it is distinguished from a despotic one is, the preservation and protection of individual right; for it can make no difference with the citizen what the form of government is that oppresses him, and deprives him of his right; whether it consists of one tyrant or one hundred and sixty, if his suffering and deprivation are the same.
*It is difficult to conceive on what principle men elected, by the people for public purposes, can limit and restrain individuals in the exercise of their legitimate rights.
■ If individuals give up any part of their rights by becoming members of society, it is that they may obtain protection for' such as remain ; and on the same principle that *539 allegiance is demanded by the government, protection is claimed by the citizen; and if not granted, the original compact is broken.
If courts of justice have occasion to advert to first principles the object should be the protection of individual right and not to confirm legislative usurpation. And in a government founded on principle, it is the duty of the judiciary department to decide in favor of individual right, when it is required to be done, on fundamental principles, though it should be to declare invalid an act of the legislature. The contest which ended in the separation of these United States from Great Britain, was a contest for individual right, intended to be secured by the Constitution of the United States. But of what avail is it, that no law shall be passed impairing the obligation of a contract, or that private property shall not be taken for public use, without a just compensation, if the paramount right to dispose of our property by will is denied us ?
In a government founded on principle, the application of it is the only limitation of power. The judiciary, although the weakest, is the most independent branch of the government, and the only branch that can, by the force of principle, limit and restrain the exercise of power. Can it then admit of a doubt, that it is the duty of the judiciary so to apply principle as to prevent any encroachment by the legislature upon individual right ?
Although I have taken a view of the subject somewhat different from the chancellor, I am however satisfied with the different views which he has taken. Yet I think his decree ought to be so modified as to allow the appellant his costs; inasmuch as he has acted under the advice of counsel, and I see nothing reprehensible in his conduct.
*Stebbins, Senator. The merits of this case do not appear to me to lie beneath the mass of learning which has been displayed in the investigation of the case.
As I view it, the inquiries whether a devise of lands to a corporation directly, is void or not under the statute of wills, and if void, whether such a devise can be sustained in equity *540 in virtue of the genera, powers and jurisdiction of the court of chancery in cases of trust, do not become material.
The questions presented by the case, as I view it, are first, whether the testator (Philip Jacobs) devised the real estate in question to the corporation directly,, or to his executors, subject to the trusts- mentioned in the will; second, whether the devise to trustees for the use of the respondents, is a- valid devise, under which they can take as cestuis que use; and third, whether the use is executed by the statute of uses, and-if so, the effect.
To carry into effect the intention of the testator, is a cardinal rule in the construction of wills ; and to do so, it is necessary to give effect to every part of the instrument, if possible.
The testator devises all the rest, residue and remainder of his estate real and personal, (which includes the premises in question,) to The Orphan Asylum Society, to be applied to the charitable purposes, for which the association was established; to take effect immediately after the payment of debts and legacies, if he should leave no child; but if he should leave a child, then to take effect upon the death, intermarriage, or attaining of age of such child.
This, it is contended, is a direct devise to the respondents of the real estate in question ; and, standing alone, it would undoubtedly be susceptible of no other construction ; but he proceeds to devise all his real estate to his. executors, subject to the trust aforesaidand declares his will to be,- that whenever such child should attain the age of twenty-one years, or marry, his real estate should be sold by his executors, and one half the proceeds paid to such child.-
The testator had a posthumous child, which died at about the age of two years. Had that child lived and attained to the age of twenty-one years, no doubt can be entertained of *the intention of the testator, that it should then be entitled to a moiety of the proceeds of the real estate, which was to be sold by the executors. But such a provision is in hostility to the previous devise to the respondents, to take effect upon the coming of age of the child. Upon the hap *541 pening of that event by the first clause,,the.estate was to vest in the corporation, and by the subsequent, one,.to be -sold by the executors, and one half the proceeds paid to the child. If, therefore, the-'first devise is to be carried :into effect according to its terms, the latter provision is entirely without effect.
To give effect to every part of the will, it seems to have been the obvious intention of the testator, if he should leave a child, to devise the real ,estate to, his executors in trust for the society, if such child should die under age and unmarried; if not, then upon the .maturity or marriage of the child, to be sold, and the proceeds divided between the society and such child.
The executors, then, took the estate at the death of the testator, subject to these trusts; - and the question arises whether, at the death of the child under age and unmarried, the real estate was, by the terms of the mil, to vest in the corporation.
It has been- said upon the argument, that if the executors took the estate as trustees, they can only be divested of that ' trust by their own grant, or by operation of the statute of uses; but: I can perceive-no objection (provided the terms of the will require it,) to their holding the estate in trust, until the happening of an event such as the death of this child; and then that the fee should vest in other persons, by way of executory devise. Was it then the intention of the testator, upon the happening of this contingency, that the fee should vest in the corporation, or continue in the trustees for their benefit 1 The latter appears to me to be the fair construction of:the-will.
In one paragraph he devises, after payment of debts and legacies, “all the rest, residue, and-remainder of his estate real and personal, to the respondents, to take effect upon the death of this child; and in the next he devises his real estate to his executors, subject to the,trust aforesaid. It was a *use, therefore, or beneficial interest, which I suppose be intended to devise to the respondents, leaving the fee in the hands of the .trustees.
If, as I have endeavored to show, it was r.ot the intention *542 of the testator to dévise the estate diréctly to the respon» * bents upon the coming of age ox his child, it is a strong argument to prove that such was not his intention in cáse of the death of such child; for both contingencies are coupled in the same paragraph, and there is no limitation to the trust created in either case,
The next and more important question is, whether the x ... corporation can take the use under this will, notwithstanding the provisions of our statute of wills. This statute enacts that any person having any estate of inheritance in any lands, tenements or hereditaments, may give or devise the samé, or any rent or profit out of the same, to any person or persons, (except bodies politic and corporate,) by his last will and testament, or by any other act by him lawfully executed; and it is contended, that if a devise to a corporation directly would be void, a devise of the usé is also void.
Although in England; under the Saxons, lands were deviable by will at common law, yet at the Conquest, and upon the introduction"of the feudal system,'the common law underwent á complete change in this respect; and an estate in fee simple in lands was no longer devisable. It became inconsistent with the nature of that system, that a tenant should have an unlimited power tó devise his lands ; for' the reason that he might devisé to persons incapable of performing- feudal services. The power of alienation by devise, (except of a chattel interest,) is in England, then, to be traced to the statutes of wills of the 32 Hen. 8, ch. 1, and 34 Hen. 8, ch. 5.
Our statute of wills is a transcript of these, with the additional enumeration of rents and profits. It is contended that" the terms rents and profits mentioned in the statute, are intended to describe a use, and that as the lands cannot, so the use also cannot, be devised to a corporation under this" statute.
*1 apprehend, however, there is a material difference between rents and profits, and that which has long been known under the denomination of a use.
Rents and profits are incorporeal hereditaments ; but a use is not. A use is said to be neither jus in re nor ad rem, *543 neither right, title nor interest in law, but a species of property unknown to the common law, and owing its existence to the equitable jurisdiction of chancery, resting upon confidence in the person and privity of estate : a thing collateral to the land, and only annexed to a particular estate in it, not to the mere possession; so that when the estate to which the use is annexed is destroyed, the use itself is destroyed, as by disseisin, or the entry of tenant by the curtesy or in dower. It was rather a hold upon the conscience of the feoffee to uses, than a lien upon, or interest in the land; and the principle upon which it was founded was, that the feoffee was bound in conscience to follow the direction of the feoffor. (See Cruis. Dig. tit. 11, ch. 2.) A thing so subtle, and cognizable only in courts of equity, which act upon the conscience, differs essentially from an incorporeal hereditament, which is of legal cognizance. Indeed, incorporeal hereditaments, such as rents, advowsons, &c., were the subject of conveyance to uses.
If, then, a use is not comprehended in the terms of the statute, the argument rests upon the ground that if a devise of land to the corporation would have been invalid, the demise of the use is equally so.
It might perhaps be conceded, that if corporations were prohibited by statute from taking the fee by devise, (which by the by, is not the case,) the law would not allow them to take the use. But the history of the English law furnishes at least a plausible argument against such a proposition.
Corporations were prohibited by several statutes of mortmain from holding lands ; yet it was deemed necessary to enact the statute of 15 Rich. 2, ch. 5, declaring uses subject to the statutes of mortmain. (Chudleigh’s case, 1 Rep. 120.)
But the statute of wills is an enabling statute, and not prohibitory. Before this statute, individuals had no capacity *to devise lands ; but this enabled them to do so, except to corporations. In conferring the capacity to devise, the legislature withheld the capacity to devise to a corporation ; and for what reason ?
Before the statute of wills, corporations were prohibited *544 by the mortmain acts from taking or holding lands, or uses ■ arising from them. The exception therefore, in the statute of-wills, could not-have been introduced for the purpose of prohibiting, corporations from taking by .devise, for .they were already prohibited from taking in any mode ; but was to guard- against enabling them to take by devise. Without the exception in the statute of .wills in - England they .would have been enabled to take by devise, when the mortmain acts would have prohibited their taking .in any othei ,way.
The history of the statute, I think, fortifies this view . of it. In the first statute of wills, (32 Hen.: 8, ,ch. 1,) corporations were not excepted, and were therefore enabled to take by devise in common with other persons, contrary to the policy of the statutes of mortmain; but two years after-wards the parliament, finding the mortmain acts- so- far epealed by the statute of wills, passed a new statute, (34 Hen. 8, ch. 5,) not prohibiting corporations m terms from taking under the statute of wills, but entitled, “ an act for the explanation of the statute of wills,” in which they -re-enact the provisions of the first statute of,wills, and introduce the exception as to corporations ; not, therefore, expressly prohibiting corporations from taking, but qualifying the capacity to devise. The intention seems to have been to rely upon the mortmain laws, to keep property from corporations and to qualify the statute of wills so as not to interfere with those prohibitory acts.
The distinction is a wide one between an incapacity to devise and a prohibition against taking; for although there may be an incapacity to devise directly to a corporation,' yet such incapacity will not prevent the corporation from taking by. grant from the devisee in trust, if there is no prohibition against their taking. So, too, there be an incapa city to devise lands to a corporation, and yet the corporation may-*take a use. But in either case, if prohibited from taking, the law would not probably allow that to be indirectly done which was directly prohibited.
If, then, there is no other reason arising from the, statute of wills why corporations may not take land by devise, except the want of capacity in the devisor to convey, there *545 Would seem to be no objection in this case against the corporation’s taking as cestui que use; for a devisor has capacity to devise a use; and this corporation is not prohibited from taking and holding either land itself or a use. All the English mortmain acts, including the 15th Rich. 2, are repealed by our statutes.
And if corporations cannot take by devise, merely for want of capacity to take in that particular way, the cases of a conveyance from a wife to her husband through the intervention of a trustee, and of a tenant in tail to a purchaser by means of a common recovery, seem to be conclusive to show that an indirect mode of conveyance is no fraud upon the law when resorted to only to remedy a want of capacity to convey directly.
But it is contended, that inasmuch as our legislature saw fit to repeal the English mortmain acts, including the statute of 9 Geo. 2, ch. 36, which prohibited all charitable bequests unless made and enrolled one year previous to the death of the donor, the policy of retaining the exception in the statute of wills, was to prevent impositions upon persons in extremis who might easily be persuaded to dispose of property to ecclesiastical incorporations for charitable uses, after it should no longer be of use to themselves.
Such an object, however, would not seem to comport with the policy of the legislature, who neither saw fit to prohibit corporations from holding lands, nor to impose the restraints of the statute of 9 Geo. 2.
If the policy was to prevent impositions, why was not the exception in the statute aimed at devises for religious or charitable purposes, instead of devises to corporations gen-rally ? There surely is no danger of persons making improvident devises to monied or manufacturing corporations.
*The English statutes, which the legislature were reenacting, furnished every variety of prohibition against improvident devises, much better calculated to effect the object than any general prohibition of devises to corporations. They guarded against improvident devises, whether io individuals or corporations, for religious, superstitious or charitable uses.
*546 If it is shown that the exception in the statute of wills is to be regarded not as a prohibition against the taking oi lands by a corporation, but as a qualification of the capacity to devise, created by that statute, the opinion pro nounced in the court of chancery in this cause, contains another view of the subject which appears to my mind perfectly conclusive. It is, that before the statute of wills, when persons were not capacitated to take lands by devise, they might nevertheless take the use in that way; and, therefore, that since the statute of wills, although corporations cannot take lands by devise, yet they may take the use, there being no prohibition.
Corporations, 'since the statute of wills, stand in the same situation as to taking lands by devise, as all natural persons stood in before that statute. If, therefore, a use was devisable before the statute, a corporation may take a use by devise since the statute, especially if it be such as is not executed by the statute of uses.
It is said by Cruise that uses were devisable, though lands were not; and persons, by that means, acquired a disposition of property for the benefit of their families, which they had not otherwise. They were the invention of ecclesiastics to evade the statutes of mortmain. And after the 15th Rich. 2, ch. 5, which subjected them to the statutes of mortmain, the practice of conveying to uses was continued, as the most effectual mode of evading the hardships of the feudal tenures, and of securing estates from forfeiture for treason. They became general, and were applied to purposes inconsistent with the policy of the government. Feoffments were made secretly; so that persons who had to sue, found it difficult to ascertain the right tenant against whom to bring their pracipe. Widows were deprived of their dower, husbands of their curtesy, purchasers and creditors were defrauded, the * king and other lords lost their profits, fines, &c., and obscurity and confusion of titles prevailed.
During the long and bitter contest between the houses of York and Lancaster, most of the lands in England are said to have been conveyed to uses. As these evils came *547 t'O-be felt, the parliament attempted, from time to time, to apply a remedy. By the 50th Ed. 3, feoffments to the use of the feoffor were made liable to execution creditors; by the 1st Rich. 3, ch. 1, all conveyances by cestui que use Were made valid; by the 1st Hen. 7, ch. 1, a formedon Was given against cestui que use; by the 4th Hen. 7, ch. 17, lords were entitled to wardship of the cestui que use; by the 19th Hen. 7> ch. 15, further relief Was extended to creditors ; by the 23d Hen. 8, superstitious uses were suppressed; and, finally, by the statute of uses, 27 Hen. 8, ch. 10, after reciting all these mischiefs, the legislature declared that possession shall be annexed to the use.
The object of the crown was to re-assert its rights of Wardship, and other feudal profits out of the lands of the nobility; and the intention of parliament was to abolish Uses by changing them into legal estates, and subjecting them to the rules of common law tenures.
The construction of this act, however, in a great measure defeated the intention of the legislature. Transferring the possession to the use by this statute gave rise to a mode of conveyance, by this means, which, on account of its convenience, by dispensing with the ceremony of livery, Soon came into general use; so that uses, instead of being suppressed, were resorted to as the common and most simple mode of conveyance. And it being determined that all uses were not executed by that statute, its operation was circumscribed; and a large class of uses were left untouched, and have continued to this day under the denomination of trusts, constituting one of the principal branches of equity jurisdiction.
It Was said by Lord Hardwicke, (1 Atk. 591,) that this statute, made upon great consideration, introduced in a solemn and pompous manner, by its strict construction has had no other effect than to add at most three words to a conveyance.
*Before the statute of uses, we have seen they were devisable to natural persons, although there was then no statute of wills nor any common law capacity to devise.
*548 The operation of the statute upon uses, js said to hart been by turning the use into land, to render it not devisable in the same manner as the land itself. (2 Black. Com. 375.) This is the language of the elementary writers ; and during ]the short period of time between the statute of uses and the subsequent statute of wills, (a period of only five years,) I have not been able to fipd ¿any case, and few, if any, could have arisen, going to sustain, impeach, or explain the proposition.
If it is meant that during this period a cestui que use, under a feoffment or other conveyance, was, by force .of the statute of uses, to be regarded as the owner of the land so far as to incapacitate him to devise such use, he having no capacity to devise land, I perceive no objection to the proposition.
But to render the doctrine applicable to this case, it must go farther, and be held to mean that a use created by will is converted into land by the statute, and therefore was not devisable.
One of the things necessary to the execution of a use by the statute is “ a use in esseand it seems to be difficult to conceive how the statute can operate upon a use until it shall be raised, and in existence ; and if a use was raised in this case, it can only be in virtue of a capacity to devise such an interest. There being, then, a capacity to devise the use, the .operation of the statute upon it, if it is such a use as could be executed by the statute, it appears to me could be no other than by annexing the possession to the use, to vest the estate in the devisee, who would take, not as devisee, but under the statute of uses. And there would seem to be no objection to the execution of the use in this case, if the position is correct that the corporation are not prohibited from taking, whatever may be the objection as to the capacity of the testator to devise to it directly; foi it has been held in the case of a feoffment by the husband to A, for the use of his wife, that such a use *is executed by the statute, notwithstanding the husband had no capacity to convey .directly to his wife. .(Cruis. Dig. tit. 11, ch. 3, s. 28.)
*549 Btit all the' reasoning arising from the statute of Uses, is answered, if the use in this case is such as- could Hot- be executed by that statute'; for clearly, in such case,- it could have no' operation to destroy the capacity to devise'.
The question then arises, whether the use'in this cáée is within the statute'; and the' examination of it necessarily casts us back Upon the will, id seek for the intention’ of the testator. He devises the estate to trustees, in trust for the Orphan Asylumt Society, to be applied to the charitable purposes for which thé association was established. His object was not to benefit the society; but through it, to apply the estate to the charitable purposes for which the society was organized. The society itself is a trustee; and has- a trust to perform,- which a court of equity Would undoubtedly enforce. It is a devise to trustees for the' use of the society, as trustees for certain charitable pttrposes.
Suppose the corporation to be- dissolved by the expiration of its charter ;■ it hever could have been the intention of the testator that these funds should be diverted from the charitable purposes to which he devoted them ;J and a court of equity he’véf Would permit it. If the corporation should, by dissolution or otherwise, become incompetent to execute the trust, I see. nothing to' distinguish the case from that of the ordinary one of a failure of th'é' írüsteé, in which the court Would act by the appointment of another.
Again, suppose the' powers of the corporation to be enlarged by a statute authorizing it to' do banking or insurance business, in addition to the charitable operations for which it was first incorporated; will it be contended that it was the intention of the testator; that these funds should be used, or that the" laW Would permit them to be used in such banking or insurance operations, instead of being applied to the charitable purposes designated in the will ? I apprehend not.
If it is granted, then, that the corporation itself had a trust to execute under this will, it is a case not within the statute of uses ; for that statute can only execute the first use, which, *in this case, would vest the estate in the cor *550 poration, unincumbered by any trust for charitable purposes, and contrary to the plain intention of the testator.
A trust is a use not executed by the statute; and the author of the Touchstone remarks, (p. 507, n. (1),) that “ one of the modes of creating a trust, is said to be where lands are limited to the use of A. in trust to permit B. to receive the rents and profits ; for the statute can only execute the first use.
The conclusions which follow my view of the case are, that the devise of the real estate in question, was not to the corporation directly, but to the executors for the use of the corporation upon the contingency which has happened, to be appropriated to certain charitable purposes :
That under the statute of wills, there is a mere incapacity in corporations to take lands by devise, and not a prohibition against their taking:
That a use was devisable at common law before the statute of wills; and therefore that this corporation may take a use by devise, not being prohibited by statute from taking either a use or the land itself:
That the use in this case is not such as could be executed by the statute of uses; or if it is, that the operation of the statute would not invalidate the devise, but vest the estate in the corporation.
If these propositions are established, it follows that the respondents are entitled to the estate in question; and that the decree of the court of chancery is, at least, substantially correct.
Burrows, Gardiner, Haight McCall and Smith, senators, concurred, that the decree should be affirmed.
Decree of reversal as to the real estate

 Bowen v. Lease, 5 Hill, 221.

«) The remark of the learned senator would seem to apply to such lands only as were granted by the people of this state before or since 1776 j not to grants before that time by any other authority. (Vid. u act concerning tenures,sess. 10, c. 36, s. 3 and 6, 1 R. L. 7I.) The premises hi question, situate in the city of New York, probably come within the 3d section; and are therefore holdeu in free and common socage having been granted by the king or colonial government, before 1776 j not by the people, whose granta alono are allodial»

 But see note (a) ante, 511.