New York County.—Hon. D. G. ROLLINS, Surrogate.—July, 1886.

Wardlow *v.* Home for Incurables.

*In the matter of the application for probate of a paper propounded as the will of* Denton F. Conner, *deceased.*

The maxim, "*expressio unius exclusio est alterius*," when appealed to in support of the theory of an implied abrogation of a statute, is to be considered in connection with the principle—that repeals by implication are not favored.

L. 1881, ch. 641, limiting the power of benevolent and other societies, organized under L. 1848, ch. 319, to take by will, and expressly sub

jecting them to the restrictions imposed by L. 1860, ch. 360, has not released them from that contained in the act of 1848, whereby they are rendered incompetent to receive a devise or bequest contained in a will executed within two months of the testator's death.

*It seems*, that the limitation, contained in the act of 1848, of the power of a person leaving a wife, child or parent, to devise or bequeath to a corporation formed thereunder, to one fourth of his estate, was repealed by the act of 1860, according to which one half of the estate may be disposed of in the manner mentioned.

DETERMINATION as to validity of will, upon application for probate. Objections were interposed in behalf of John F. Wardlow, heir at law and next of kin of decedent, and others. The facts appear in the opinion.

N. A. CHEDSEY, *for executor, proponent.*

BOORAEM & HAMILTON, M. BANTA, *and* JOHN A. O'BRIEN, *for contestants.*

STEARNS & CURTIS, *for legatee.*

THE SURROGATE.—While the contestant in this proceeding concedes that the paper lately propounded as decedent's will is entitled to probate, he raises an issue as to the validity of its sole dispositive provision, and asks the Surrogate, pursuant to § 2624 of the Code of Civil Procedure, to determine that issue upon the entry of a decree.

I have no doubt of the Surrogate's jurisdiction in the premises, for the provision in question is a " disposition of personal property " exclusively. The testator has directed his executors to convert his entire estate, real and personal, into money, and, after the satisfaction of his debts and funeral expenses, to pay the residue and remainder to the Home for Incurables of the city of New York.

This direction, if effectual at all, brought about at the death of the testator an equitable conversion of his real estate into personalty (Van Vechten v. Van Veghten, 8 *Paige,* 104; Stagg v. Jackson, 1 *N. Y.,* 206; Meakings v. Cromwell, 5 *N. Y.,* 136; Hatch v. Bassett, 52 *N. Y.,* 359; Fisher v. Banta, 66 *N. Y.,* 468; Power v. Cassidy, 79 *N. Y.,* 602–613).

The " Home for Incurables " is a benevolent association, organized in the year 1866, under chapter 319 of the Laws of 1848, entitled " An act for the incorporation of benevolent, charitable, scientific and missionary societies " (2 Banks, 7th ed., 1701). Section 6 of that act is as follows :

" Any corporation formed under this act shall be capable of taking, holding or receiving any property, real or personal, by virtue of any devise or bequest contained in any last will and testament of any person whomsoever, the clear annual income of which devise or bequest shall not exceed the sum of $10,000; provided no person leaving a wife or child or parent shall devise or bequeath to such institution or corporation more than one fourth of his or her estate after the payment of his or her debts, and such devise or bequest shall be valid to the extent of such one fourth; and no such devise or bequest shall be valid in any will which shall not have been made and executed at least two months before the death of the testator."

This decedent died on January 23rd, 1886, just one week after the execution of his will. His bequest to the Home for Incurables is therefore ineffectual unless, since its incorporation, that society has been somehow

relieved from the restrictions of the last clause of section 6, above quoted. It is claimed by the proponents that such relief has been afforded by the legislature; that, not only as regards this particular legatee, but as regards every other corporation formed under chapter 319 of the Laws of 1848, the death of a testator within two months after the execution of his will no longer serves to defeat a devise or bequest for its benefit.

This claim rests upon the supposed repeal of the time clause above quoted by chapter 641 of the Laws of 1881, which is entitled "An act relating to the right of benevolent, charitable, religious, scientific and missionary societies to take and hold real and personal estate" (2 Banks, 7th ed., 1707). It provides as follows: "All corporations already formed, or which hereafter may be formed under and in pursuance of chapter 319 of the Laws of 1848, . . . . . and the several acts amendatory thereof, . . . . . shall in law be capable of taking, receiving, purchasing and holding real estate, for the purposes of their corporation, to an amount not exceeding the sum of two hundred thousand dollars in value, and personal estate, for like purposes, to an amount not exceeding the sum of two hundred thousand dollars in value; but the clear annual income of such real and personal estate shall not exceed the sum of fifty thousand dollars; *subject, however, to the restrictions upon devises and bequests contained in an act entitled 'An act relating to wills, passed April* 13, 1860.'"

The proponent insists that the words italicized have relieved corporations formed under the act of 1848

from all disabilities to take devises and bequests, save such disabilities as are imposed by the act of 1881 itself, and by the act of April 13th, 1860, and that as by the last named act the extent of the interval of time elapsing between the day when a testator executes his will and the day of his death is not made to affect the validity of his testamentary dispositions, the two months clause of the act of 1848 is no longer operative.

So far as I am advised, the question thus raised is now for the first time presented for judicial determination. The doubtful phraseology of the acts of 1848 and 1860 has occasioned many spirited controversies in our courts, but the contribution which the act of 1881 has made to the pre-existing confusion has not as yet been considered.

The act of 1860 (L. 1860, ch. 360; 3 Banks, 7th ed., 2288) is entitled " An act relating to wills," and is as follows:  " No person having a husband, wife, child or parent, shall, by his or her last will and testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association or corporation, in trust or otherwise, more than one half part of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid to the extent of one half and no more."

This is the restriction, and the only restriction which the act of 1881 expressly makes applicable to corporations formed or to be formed under the act of 1848. Does it follow from this that those corporations are no longer subject to the restrictions imposed by the act of 1848 itself ?   In other words has the two months

clause of the latter act been repealed by implication? One of the familiar doctrines of statutory construction is thus expounded by Maxwell in his Interpretation of Statutes (2nd ed., p. 186):

" An author must be supposed to be consistent with himself; and therefore if, in one place, he has expressed his mind clearly, it ought to be presumed that he is still of the same mind in another place, unless it clearly appears that he has changed it. In this respect the work of the legislature is treated in the same manner as that of any other author; and the language of every enactment must be so construed, as far as possible, as to be consistent with every other which it does not in express terms modify or repeal. The law, therefore, will not allow the revocation or alteration of a statute by construction when the words may have their proper operation without it." And further (at p. 198): "Repeal by implication is not favored. It is a reasonable presumption that the legislature did not intend to keep really contradictory enactments in the statute book, or to effect so important a measure as the repeal of a law without expressing an intention to do so. Such an interpretation, therefore, is not to be adopted, unless it be inevitable. Any reasonable construction which offers an escape from it is more likely to be in consonance with the real intention."

To similar effect see Hayden v. Carroll (*Ridg. Parl. Cases*, 545, 599; Bowen v Lease (5 *Hill*, 221); O'Flaherty v. McDowell (6 *H. of L. Cases*, 149, 162); Burnham v. Onderdonk (41 *N. Y.*, 425); Henderson's Tobacco (11 *Wall.*, 652); Taylor v. Taylor (10 *Minn.*,

107); McCartee v. Orphan Asylum (9 *Cow.*, 437, 507); Escott v. Mastin (4 *Moore, P. C. C.*, 104, 130); Bruce v. Schuyler (9 *Ill.*, 221); Hill v. Hall (*L. R.*, 1 *Ex. D.*, 414); Bishop on Written Laws, § 119.

Whenever a later statute stands well with a part but not with all of an earlier, " the effect of a repeal by implication is limited to that part of the earlier statute which is repugnant to or inconsistent with the later and does not extend to the earlier statute generally or even to such parts as may be in juxtaposition with the part repealed" (Wilberforce on Statute Law, p. 319).

Now it is plain that there is no inherent inconsistency between a restriction which prevents *a certain class* of testators from devising and bequeathing to *any* charitable societies more than one half the clear value of their estates, and another restriction which prevents *any* testator from making an effectual devise or bequest to *a certain class* of charitable societies, except by a will made and executed at least two months before his death.   These two restraints upon the power of testators to give, and, by consequence, upon the power of corporations to take by bequest or devise, do not either in letter or in spirit clash with each other in the slightest degree.

But it is nevertheless insisted that the legislature of 1881, at the time of its enactment of chapter 641, must necessarily have had in contemplation the restrictions theretofore imposed by the act of 1848 upon associations organized thereunder, and that accordingly its explicit subjection of such associations to the restrictions of the act of 1860, and its failure to

subject them to any others, must be held to mean that all others were intentionally and deliberately abrogated. "*Expressio unius est exclusio alterius,*" says proponent's counsel. The maxim is sensible and useful in logic and in law. But it should always be applied with care and discrimination ; and in attempting to apply it here for relieving a corporation founded under the act of 1848, from restraints which that very act imposes, one encounters the opposition of a legal principle, itself almost crystalized into a maxim, the principle to which I have already referred—that, in the construction of statutes, repeals by implication are always regarded with disfavor.

The reluctance of the courts to treat an act of the legislature as an annulment of a prior act, not expressly repealed, has been asserted with especial emphasis whenever such prior act has been one of public interest and importance, has long held its place upon the statute book, has received from time to time, by revisions and modifications, the sanction of successive legislatures, and has become in some sense a part of the policy of the law. As regards such a statute, there is exceptional force in the contention that if the legislature intended to repeal it, such intention would probably be disclosed plainly and in express terms, and not equivocally and *sub silentio*, and that a new enactment, not on its face destructive of the old, should be deemed additional and not substitutionary, in the absence of clear indications to the contrary.

Now, when the act of 1881 became law, all the numerous associations that had been incorporated

under the act of 1848 during the thirty-three years that had elapsed since it came upon the statute book, labored under the disability that a testator's devise or bequest in their behalf was void unless made at least two months before his death.   That the legislature of 1881 removed this disability and abandoned the settled policy which had been pursued, as regards such associations, from the beginning of their corporate existence, is a conclusion that should not be lightly drawn from any doubtful or ambiguous phraseology of the 1881 statute.

In thus referring to the "settled policy" of our law, I am not unmindful of the language of EARL, J., in Hollis v. Drew Theol. Sem. (95 *N. Y.*, 166).   The learned Judge comments upon the absence of any steady and uniform restrictive policy of the legislature in nullifying the testamentary dispositions of a decedent in favor of benevolent associations during the last two months of his life.   But the Drew Theological Seminary, which was the beneficiary under the will whose validity was there in dispute, was a foreign corporation not formed under the act of 1848, and in no wise subject to the limitations of that statute.   There is nothing in the language of Judge EARL which is in conflict with that of WRIGHT, J., who discusses, in Levy v. Levy (33 *N. Y.*, 97), the policy of this State in incapacitating a testator during the two months before his death from making a valid bequest or devise to corporations formed under the act of 1848.

There is nothing in conflict with the language of MILLER, J., who said, in Kerr v. Dougherty (*supra*),

that the restraints of the act of 1848 seemed to in-
dicate " a general policy of the State in reference to
restricting devises and bequests in favor of corpora-
tions of a particular class."

And in the very recent case of Stephenson v. Short
(*supra*), all the present Judges of our Court of Ap-
peals concurred in the opinion of RAPALLO, J., who
commented upon § 6 of the act of 1848 as a provision
" founded on the policy of the Statute of Mortmain,"
and declared that ". the two months' clause was in-
tended to protect all the heirs and kindred of the
testator, and. even the testator himself, against the
influences which might be brought to bear upon him
in his last moments, and the mistaken notions which
might govern him in his apprehension of a speedy
dissolution."

It does not seem to me either inexplicable or ab-
surd that the legislature, as regards such benevolent
and charitable corporations as have been suffered to
spring into existence under the general law of the
State, should have persistently adhered to the policy
which it first inaugurated, and should nevertheless
have departed from that policy in granting charters
to particular corporations with such privileges and
such restrictions as in its wisdom has seemed meet.

It would, I think, be pushing the doctrine of " *ex-
pressio unius*," etc., very far to treat the legislative
declaration that corporations formed under the act of
1848 should thenceforth be " subject to the restric-
tions upon devises and bequests contained " in the act
of 1860, as involving of necessity the abolition of all
restrictions besides.

Suppose, that, when this law of 1881 was enacted, there had been upon the statute book this simple general provision: that a devise or bequest to no benevolent corporation whatever should be valid unless contained in a will executed at least two months before the death of its maker. Could it, in such a case, have been seriously contended that the passage of the act of 1881 had effected a repeal of such supposed statute so far as regarded corporations established under the act of 1848? Clearly not; and the situation thus assumed to exist does not differ essentially from the situation actually existent.

It is true that when the law of 1881 was enacted there was no general and universal time restriction upon testamentary gifts to benevolent societies; but there was a special restriction of that kind as regarded all such societies organized under the act of 1848, and as regarded the Home for Incurables with the rest.

I am strongly of the opinion that, only in so far as the act of 1860 is inconsistent with or repugnant to the act of 1848, has its incorporation into the act of 1881 repealed by implication the earliest of these three statutory provisions. Now that the act of 1860 stands well with the time clause of the act of 1848, and has not therefore worked its abrogation, has been repeatedly declared by our court of last resort (Lefevre v. Lefevre, 59 *N. Y.*, 434; Kerr v. Dougherty, 79 *id.*, 327; Stephenson v. Short, 92 *id.*, 433).

I hold, therefore, that by its subjection to the restraints of the acts of 1860, the Home for Incurables has not been so emancipated from the act of 1848 as

to be capable of receiving the bequest here in question.

This conclusion derives no slight support from McCartee v. Orphan Asylum Soc. (9 *Cow.*, 437) and Bowen v. Lease (5 *Hill*, 221). In the former case the defendant, by the act incorporating it, was empowered to obtain real estate by *purchase*. It was nevertheless incompetent, because of the restrictions of the Statute of Wills, to take real estate by *devise*, unless those restrictions had been impliedly removed by the terms of its charter. In declaring that such removal had not been effected, WOODWORTH, J. (p. 507), said: " The Statute of Wills prohibits a devise to a corporation. The act incorporating the Orphan Asylum Society declares that they may purchase real estate. In the most extensive signification of the word *purchase*, it includes a devise, and therefore relates to the subject which by the Statute of Wills is excepted. These statutes, I apprehend, ought to be construed together ; and inasmuch as the right claimed is by the former statute expressly denied, it would seem to be more congenial to the spirit of both acts to understand the word purchase in a restricted sense, and as so intended by the legislature."

The decision in Bowen v. Lease has a still closer application to the case at bar. It was given upon the following state of facts :

The eighteenth chapter of the first part of the Revised Statutes had two titles (3 and 4) which related to the powers, privileges and liabilities of corporations, the conduct of their directors, etc., etc. Section 4 of title 4 provided that transfers and assignments

of their property in contemplation of insolvency should be utterly void. The act incorporating the New York and Erie Railroad Company provided that that corporation should " possess the general powers and be subject to the general restrictions and liabilities *prescribed by title 3 of the 18th chapter."*

It was claimed that this express reference to and adoption of title 3, taken in connection with the absence of any reference to title 4, relieved the railroad company from the provisions of the latter title, upon the principle that *" expressio unius est exclusio alterius."*

NELSON, J., pronouncing the opinion of the court, after referring to the doctrine that all laws are supposed to be enacted with deliberation, and that it must be presumed that in passing a statute the legislature did not intend to interfere with or abrogate any former statute relating to the same matter, unless the repugnancy between the two was irreconcilable, declared that the corporation was subject to the restrictions of title 4 no less than to those of title 3.

" We are asked," said the learned Judge, " to give to this section an important effect by implication, viz. : to declare that it operates a total repeal of the fourth title. The settled rule as to the construction of statutes forbids that we should do so. There is no repugnancy or contradiction between the former law and the 18th section of the charter. . . . . . *Grant that it adopts the provisions of the third title, surely there is nothing in this which is inconsistent or irreconcilable with those contained in the fourth."*

In the case just cited, the provision in dispute was

treated by the court as a *clausula inutilis*, such as according to Lord BACON's maxims, Reg. 21, " expresses no more than the law by intendment would have supplied."

Similarly, in the case at bar, the provision which has occasioned this controversy must be treated as utterly superfluous, unless, *perhaps*, it has served to enlarge the capacity of corporations established under the law of 1848, so as to enable them to take, by the devise or bequest of a testator, leaving at his death a wife or child or parent, not merely one quarter but one half of his entire estate—I say *perhaps*, in view of the fact that in some of the reported cases wherein the interpretation and effect of the acts of 1848 and 1860 have been under consideration, it seems to have been taken for granted that the terms of the latter statute are broad enough to include corporations established under the former. I cannot find, however, that the proposition has ever been decisively asserted, and it may well be that the draftsman of the statute of 1881 (or the draftsman of chap. 51 of the laws of 1870, upon which the statute of 1881 has apparently been modeled) made use of the words, " subject, however, to the restrictions," etc., *ex majori cautela*, from an apprehension that the original one fourth limitation of the Act of 1848 might continue to be held applicable to corporations formed thereunder, unless such corporations were expressly brought under the operation of the general statute of 1860.

By way of summarizing my conclusions, I restate the provisions of § 6 of the Act of 1848 : Its three clauses are :

*1st.* " No person leaving a wife or child or parent shall devise or bequeath" to corporations formed thereunder " more than one fourth of his or her estate after the payment of his or her debts." [This provision, if not impliedly repealed, even as regards such corporations by the Act of 1860, is now very clearly abrogated by the incorporation of that act into the Act of 1881.]

*2nd.* " Such devise or bequest shall be valid to the extent of such one fourth." [This provision is now modified so as to make such devise or bequest valid to the extent of one half.]

*3rd.* " No such devise or bequest shall be valid in any will which shall not have been made and executed at least two months before the death of the testator."

This provision is still in force and because of it, the bequest here in controversy is ineffectual and void.