THE OVERSEERS OF THE POOR OF PERTH AMBOY v. THE OVERSEERS OF THE POOR OF PISCATAWAY.

*Certiorari* to Quarter Sessions of Middlesex.

1. A slave, who has not been manumitted according to law, cannot be considered a pauper subject to be removed by an order, so long as his master is able to provide for him.

2. In an investigation to determine who is bound to support a pauper that has been a slave, a former owner is not a competent witness to prove that he had made to another an absolute sale of the negro, as a slave for life.

3. A deed of manumission executed in favor of a negro who has since be-

come a pauper, is not sufficient evidence to make a city or township liable for his support; proof must also be made that when the deed was executed he was the slave of the grantor, and the residence of the latter in the city or township sought to be charged.

4. A deed of manumission although acknowledged and recorded is not valid unless executed in the presence of at least two witnesses.

5. The overseers of the poor of a township, in whose favor an order is made, are bound to maintain it, and if it be once voluntarily and expressly abandoned, it cannot be afterwards enforced.

On the 9th of April, 1841, two of the justices of the peace of the county of Middlesex, made an order for the removal of James Bruen, a colored man, as a pauper from the township of Piscataway, to the township of Perth Amboy. From that order, the latter township appealed to the court of General Quarter Sessions of the county of Middlesex; and by that court the order was affirmed, whereupon the proceedings were removed by a writ of *Certiorari*. The facts of the case appear in the opinion of this Court delivered by the Chief Justice.

*W. H. Lupp*, for plaintiff in *Certiorari*.

*H. V. Speer* and *J. Van Dyke*, contra.

HORNBLOWER, C. J.    James Bruen the pauper was formerly the slave of Joseph Stille of Piscataway, and was sold by him *as a slave*, to Isaac Stille jr. of the same place, by a bill of sale, on the second day of April A. D. 1816. Some time in the year 1825, Isaac Stille jr. sold the negro man either as a slave for life, or for a term of years, to M. Bruen of Perth Amboy. Whether this sale was for life, or only for a term of years, is a fact in dispute between the parties. The bill of sale given by Isaac Stille jr. to M. Bruen is lost: but M. Bruen swears, that be bought the time or service of the negro for the term of five years and six months, and that at the expiration of that time he was to give him a Bible and a suit of clothes. Besides this parol declaration of M. Bruen, we find sent up with the record, a certificate, or written declaration of M. Bruen, signed by him and bearing date, the 18th August, 1825, as follows; " I the subscriber have bought of Isaac Stille, jr. of Piscataway, the time of service of his negro boy James: namely, five years and six months from this date: and I do bind myself, my heirs, executors, ad-

ministrators and assigns, to manumit the said boy at the expiration of that term, and if he lives at that time, to give him his freedom."

This last piece of evidence was introduced however, by the counsel for the township of Piscataway, who insists that though M. Bruen states in the certificate, that he had bought the services of the negro, for four years and six months, yet that he covenants to *manumit* the negro, and *give* him his liberty, at the end of that time, which, they say, he could not do if he was not his slave, and that therefore he must have been the absolute owner of the negro. In addition to this, the counsel for Piscataway, produce the manumission papers of the negro, and M. Bruen's deed of manumission, dated the 1st day of October, 1832, in which he describes himself as *the owner of the negro* James, whom he thereby manumits and sets free.

The counsel for Piscataway also rely on the testimony of Isaac Stille: but it is very unsatisfactory; not because Mr. Stille is not worthy of being believed; but because his statement shows that he has no clear recollection about the matter; for he admits that he did think, and had said, before he found Joseph Stille's bill of sale to him, that he had sold the negro to M. Bruen only for a term of years; and he thought so, because he thought he bought him so, and believed he had sold him as he had bought him; but that since he had found the bill of sale from Joseph Stille to him, which was for life, he was induced to believe he had sold him to M. Bruen for life. This however, is denied by M. Bruen, who says, he signed the manumission papers, because he supposed that was the legal course.

Here then is an issue of fact: and it is a very important one : for if James the negro, never was the slave of M. Bruen, then he has never been manumitted, and is not a pauper subject to be removed by an order; at least not so long as his master Isaac Stille is able to provide for him.

But then the court of Quarter Sessions were the proper judges of this fact; and they have decided that *James* was the slave of M. Bruen. They must have so decided, or else they could not have affirmed the order of the justices : and more than that, they must have adjudged that the negro had been lawfully manumitted

by Bruen ; or else, the township of Perth Amboy would not be liable for his support.

All we have to do therefore, is to inquire whether the Sessions arrived at those conclusions by lawful evidence.

First then : was Isaac Stille a competent witness to prove an absolute sale of the negro as a slave, to M. Bruen ? I think not. He had a direct, and an important interest at stake. If he could not fix the absolute ownership on Bruen, he remained liable for the suppprt of this insane negro : neither Bruen, nor the town-ship of Perth Amboy could be made liable for his support, if the absolute property still remained in the witness. But unfortunately for Perth Amboy, they called this witness themselves, and cannot now object to his competency.

The township of Piscataway however, gave in evidence the deed of manumission executed by M. Bruen. This instrument was certainly admissible evidence to contradict Bruen, and show that he considered and had admitted himself to be the owner of the slave. It was not however, conclusive upon that point. As a witness, he was not estopped by it, so as to preclude him from saying, that he had executed that paper, under a misapprehension of his duty or his power. It may be true, that the bill of sale to him was for life, and yet having bought him under a stipulation to liberate him in five years and six months, he may have signed the certificate in the shape he did : or he may have bought him for a time only, and yet have supposed that the duty and the power of manumitting the negro, lay on him.

But another question arises. Bruen was no party to this suit. The controversy was between Perth Amboy and Piscataway. Admitting therefore, that the deed of manumission, was some evidence, or even conclusive evidence as against Bruen, that he owned the slave, *was it evidence* against the township of Perth Amboy ? I think not. I cannot make a city or town liable for the support of a negro, by simply executing to him a deed of manumission. Whoever seeks to make the city liable, must go further and prove. that he was my slave when I executed the deed. After having proved that, then no doubt it would be competent to produce the manumission papers to show that he was a freeman and chargeable to the city, if I had resided there when they were executed.

But suppose the fact of the ownership of the slave by Bruen to have been sufficiently proved by the testimony of Isaac Stille; (and that was a question for the Sessions exclusively,) was the deed of manumission sufficiently executed, so as against the township, to make him a freeman, and a legal pauper?

The deed has no subscribing witness. The statute, *Elm. Dig.* 523, *sec.* 21, requires that the deed of manumission shall be executed in the presence of "at least two witnesses." But it is supposed that because this deed has been acknowledged in the manner prescribed by the fifth section of the supplement, *Elm. Dig.* 526, it is good and effectual, notwithstanding it has not even one subscribing witness. This is a mistake. The object of the supplement was not to dispense with the necessity of "at least two witnesses" to the execution of the deed; but to provide a mode in which the deed might be made evidence in any court of this state, without calling the subscribing witnesses to prove its execution. A little attention to the phraseology of the act, I think will satisfy any one, of this. Admitting therefore, that M. Bruen was the absolute owner of the slave, he never manumitted him according to law; or in any such manner as to make him a public charge; and according to the opinion of a majority of this court, in *The State* v. *Emmons, and The State* v. *Crammer, Penn. Rep.* 5, not even in such a way as to entitle the slave himself to his personal freedom.

Upon this ground alone then, if there was no other, the order of removal and the order of Sessions affirming it, must both be quashed.

But there is another fatal objection to these orders. On the 7th of February, 1839, an order was made by two Justices, removing this same negro man from Piscataway to Perth Amboy. It was executed and the pauper had been removed under it to the latter place. On the 12th of March following, the overseer of Piscataway abandoned that order, and certified upon the back of it (in the presence of Mr. George A. Vroom, one of the counsellors of this court, who subscribed that certificate as a witness) that he had examined into the case and was satisfied from the evidence that had come to his knowledge, that the order had been improvidently made, and that the pauper was not chargeable to Perth Amboy, and he thereby agreed to *take back* the pauper and

relieve Perth Amboy from the charge without an appeal, or any legal proceeding whatever. This, I think, upon principle, as well as upon the authority of *Rex* v. *Llamhydd*, *Burr. Sett. cases* cited in 3 *Burns Just.* 562, by the name of *Llamhydd* v. *Denbigh*, was conclusive upon Piscataway, as against Perth Amboy, at least, until it can be shown that there was fraud or collusion, in getting the overseer of Piscataway to desert that order. It will not do to permit townships to try experiments upon each other. If one township gets an order on another, the township getting the order must stand by it, and if appealed from, maintain it: or else abandon it for good and all. It was, as Lord Mansfield said in the case above cited, and as the Supreme Court of New York, remarked, in the *People* v. *Supervisors of Cayuga*, 2 *Cowen*, 530, like a person's giving up a judgment in his own favor. But that desertion of the order did not preclude Piscataway from sending the pauper to any other place where his settlement might be found to be.

For both these reasons therefore, I am of opinion both orders must be reversed, with costs.

NEVIUS, J. An order of two Justices was made on the 12th of April, 1841, to remove James Bruen, a colored man, and alleged to be a pauper, from Piscataway, where it was said he had become chargeable, to Perth Amboy, as his place of legal settlement. Upon an appeal taken from this order to the Quarter Sessions of Middlesex, it was affirmed. This *Certiorari* is brought to reverse the judgment of the Sessions, and several reasons have been assigned in support of the reversal, only one of which I deem it necessary to notice, to wit: that James was once a slave and never was legally manumitted.

The case shows, that James was the slave of Joseph Stille, who, by an absolute bill of sale, dated the 2d of April, 1816, sold him for life to Isaac Stille, jr. who resided in the township of Piscataway. In 1825, Isaac Stille, jr. sold him to Matthias Bruen of Perth Amboy, with whom he served for some years. On the 1st day of October, 1832, M. Bruen executed a deed of manumission, to which there are no subscribing witnesses.

The plaintiffs deny the validity of this instrument as a deed of manumission and if it be void and ineffectual, the order of the

Perth Amboy v. Piscataway.

Sessions affirming the original order of the Justices must be reversed.

By the twenty-first section of the act respecting slaves, *Elm. Dig.* 523, it is provided, " That it shall be lawful for any owner of a slave, to manumit such slave, by writing, under his hand and seal, executed in the presence of at least two witnesses, and such owner shall thereupon be acquitted from all charges for the support of such slave." By the twenty-sixth section of the same act, every owner of a slave not manumitted according to the foregoing directions, is declared liable at all times to maintain and support such slave. The apparent design of the legislature in these provisions, was to make it the duty of the master to supply the township with clear and satisfactory evidence of the bona fide execution of such instrument and of its consequent liability to support such slave in case he should become chargeable, and to prevent imposition by means of spurious deeds of manumission. The statute declares in express terms, what shall constitute a legal manumission, so as to discharge the master. It shall be executed in the presence of at least two witnesses, and if not so executed he shall not be discharged from his legal obligation to maintain his slave. In the present case the deed is not so executed, at least there is no evidence that it was. Although the statute does not in terms direct, that the deed be signed and sealed in the presence of two *subscribing* witnesses, yet I take that to be its true meaning and proper construction. The instrument should bear upon its face the evidence, that the law had been complied with, and the party interested, has a right to know upon whom to call to explain the transaction.

But the defendants answer this objection by referring to the fifth section of the " act for the gradual abolition of slavery," passed in 1820, *Elm. Dig.* 526, which provides, " That in case any deed of manumission heretofore made or hereafter to be made, shall be acknowledged by the party who executed the same, or be proved by one or more of the subscribing witnesses, before any one authorized to take the acknowledgments of deeds, or before any justice of the peace, in that case such deed of manumission so acknowledged, or proved and certified, shall be received in evidence in any court of this state, in like manner as if the same were then and there, proved by two witnesses." As the

deed in question was acknowledged by the party who executed it, the defendants contend it is a good and legal instrument, by virtue of the last recited act, and that it needed not two witnesses to make it so.   In this they are mistaken.   The former act declares what shall be the necessary requisites to a lawful manumission, the object of the latter was not to dispense with any of those requisites, but to provide a mode of proving the instrument without the production of the subscribing witnesses.   It accordingly provides, that if such deed shall be acknowledged by the party, or proved by the subscribing witness, and certified by the proper officer, it shall be received in evidence in like manner as if proved in court by the subscribing witness.

The sixth section of the last mentioned act, makes it the duty of the clerk of the court to keep a book wherein to record such deed so acknowledged or proved ; and the seventh section makes such record or a copy thereof, as good and lawful evidence as the original instrument so acknowledged or proved.   It is clear that the legislature by this last act, have not in terms repealed any of the provisions contained in the twenty-first section of the former, and to my mind it is equally clear, that they have not done so by implication, or intended to do so.   These statutes can stand together each in full force without conflicting with the other.   If under the latter, a deed be acknowledged or proved and so certified by the proper officer, it may be read in evidence : if recorded, a copy may be received as evidence, but to make it a valid instrument, it must be executed in the presence of two subscribing witnesses.   Under the former act, it was necessary to call the witness to prove it, under the latter his presence is dispensed with and the deed having the proper requisites becomes evidence per se.   There is nothing in the latter act which by implication repeals any part of the former, and it is a rule, that two statutes shall stand together and both have effect if possible. The law does not favor repeal by implication, and all acts in *pari materia* are to be taken together, as if they were one law. 9 *Cow.* 437.   When the legislature speak of a deed of manumission in the act of 1820, they must be understood as referring to such deed as by their former act they had declared to be a valid deed.

I think the objection to the deed of manumission in this case,

is well taken and that the master of this slave is not discharged by it from his liability to support him, and that the township of Perth Amboy is not liable for his support, [at all events till it is proved that the master is insolvent and unable to maintain him,] and that the judgment of the Sessions as well as the order of the Justices, should be reversed and set aside.

I avoid expressing any opinion upon the evidence which has been presented touching the ownership of this slave, whether he was the slave of Mathias Bruen at the date of this deed, or of Isaac Stille, because I deem it unnecessary for the decision of the case.

*Judgment and Order reversed.*

ELMER and WHITEHEAD, Justices, did not hear the argument, and gave no opinion.