THE BOARD OF EDUCATION OF THE VILLAGE SCHOOL DISTRICT OF THE TOWN OF MALONE, Respondent, *v.* JOHN O'ROURKE, Appellant, Impleaded with CATHERINE O'ROURKE and Others, Defendants.

Third Department, March 11, 1920.

Schools — eminent domain — acquisition for school purposes of village lot, part of which has been used for garden for more than one year — necessity that consent of owner be obtained — statutes — construction — eminent domain statutes to be construed strictly.

A lot in a village cannot be taken for school purposes without the consent of the owner where a part of the lot is used for a garden which has existed for more than one year, for section 464 of the Education Law, as amended by chapter 782 of the Laws of 1911, providing that a garden which has existed for one year, or any part thereof, not within a city, cannot be taken without the owner's consent, applies where the garden constitutes a part of a property the whole of which is condemned.

Statutes authorizing the power of eminent domain should be strictly construed.

In construing statutes it is the duty of the courts not to have regard to the effect of such construction on particular cases but to effectuate the intention of the framers of the statute who are responsible for the language used and who have the power to mould and change the language so as to give expression to their judgment.

JOHN M. KELLOGG, P. J., and WOODWARD, J., dissent on the referee's opinion and report.

APPEAL by the defendant, John O'Rourke, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Franklin on the 20th day of September, 1919, on the report of a referee in a condemnation proceeding, and also from an order entered in said clerk's office on the 20th day of November, 1919, confirming the report of commissioners in said condemnation proceeding.

*A. B. Cooney,* for the appellant.

*Allen & McClary* [*Arthur E. McClary,* of counsel], for the respondent.

COCHRANE, J.:

The question on this appeal arises under section 464 of the Education Law and involves its construction.

The purpose of the proceeding is to condemn real estate in the village of Malone owned by the defendant John O'Rourke. The property consists of two village lots, one fronting on Webster street, 100 feet wide and 348 feet long, and the other fronting on Rockland street, 100 feet wide and 239 feet long. The two lots are contiguous to each other in such a way that they together constitute a rectangular parcel of land 100 feet wide extending from Webster street to Rockland street, which two streets parallel each other. On the Webster street lot there is a garden extending the full length of the lot, the garden being 348 feet long and 87 feet wide in the rear and 42 feet wide in front or next to the street. On the Rockland street lot there are two gardens, one 18 feet by 87 feet and the other 9 or 10 feet square. All of these gardens had existed for more than one year prior to the commencement of this proceeding.

Section 464 of the Education Law as enacted in 1910, being chapter 140 of the Laws of that year, was as follows:

" When owner's consent necessary. The following property cannot be acquired without the consent of the owner:

" 1. A homestead occupied as such by the owner.

" 2. A garden, orchard, or any part thereof, not within a city.

" 3. A yard or inclosure, or any part thereof, necessary to the use or enjoyment of buildings.

" 4. Fixtures or erections for the purposes of trade or manufacture."

The section was amended by chapter 782 of the Laws of 1911,

but that amendment has no bearing on the question here involved. So far as such question is concerned the amendment merely provided that a garden or orchard or trade fixture or factory should have existed as such for one year before the beginning of the proceeding in order to be within the protection of the section. Section 463 (as amd. by Laws of 1913, chap. 221) provides that not less than the whole of a city or village lot with the erections and improvements thereon shall be condemned.

The learned referee who determined this proceeding held that subdivision 2 of section 464 does not apply when, as in this case, a garden or orchard constitutes part of a property the whole of which is condemned. Such a construction is contrary to the plain reading of the statute and I am unable to discover any justification for giving it such a forced construction or reading into it such a meaning. It may be that such is the meaning of subdivision 3 in respect to a " yard or inclosure " because those words are qualified by the words " necessary to the use or enjoyment of buildings." When buildings are taken or the whole of a property of which a " yard or inclosure " is part no buildings of course remain to which such yard or inclosure can be necessary. They are naturally incidental to a building. But there are no such qualifying words in subdivision 2 in respect to a " garden " or " orchard," and as to them the argument fails. It is somewhat difficult to understand how an orchard can ordinarily be necessary to the use or enjoyment of any building. Orchards and gardens are placed in the same subdivision, and the construction of the statute in reference to one class of property necessarily applies to the other.

Some light may be thrown on the legislative intent by a consideration of the history of the statutory provision now contained in section 464. Chapter 329 of the Laws of 1871 amended section 12 of chapter 800 of the Laws of 1866 relative to the taking of lands for the erection of school houses and provided among other things that said act should not apply " beyond the corporate limits of cities, to any garden or orchard, or any part thereof, nor to any part of any yard or inclosure necessary to the use and enjoyment of buildings, or any fixtures or erections for the purposes of trade or manufactures, without the consent of the owner or owners thereof." That provision, substantially unchanged, remained in the statutes as a part of

the Education Law of the State notwithstanding its various amendments and revisions, and was enacted in precisely the same form in section 123 of the Education Law of 1909, being chapter 21 of the Laws of that year and constituting chapter 16 of the Consolidated Laws of that year.    (See, also, Consol. School Law [Laws of 1894, chap. 556], tit. 9, § 2, as amd. by Laws of 1904, chap. 305.)

It is pressed on our attention that during all those years the words " necessary to the use and enjoyment of buildings " related back to the words " garden or orchard " and qualified them as well as the words " yard or inclosure." If we yield to this argument it is answered by the Legislature itself when in the year 1910, by chapter 140 of the Laws of that year, it amended the Education Law, constituting chapter 16 of the Consolidated Laws of the previous year, and enacted section 464 in the form above set forth. By that section property which could not be acquired without the consent of the owner was divided into four classes. The classification was made in such form as to preclude the argument that the words " necessary to the use or enjoyment of buildings " in subdivision 3 relate back to and qualify the garden or orchard of subdivision 2. The Legislature placed its own interpretation upon the statute and by the amendment of 1910 unmistakably indicated its meaning. What before may have been doubtful and ambiguous now became certain and unambiguous. Can any satisfactory reason be suggested why a factory or trade fixture specified in subdivision 4 as immune from condemnation should lose that advantage merely because an entire property of which it forms a part is condemned? In my opinion structures for the purposes of trade or manufacture which have existed for one year are under all circumstances exempt from condemnation. The Legislature intended to protect such property for the reason that it might be a peculiar source of income to its owner, interference with which in the judgment of the Legislature was unwise. Or can any satisfactory reason be suggested why an orchard, specified in subdivision 2 as immune from condemnation, should lose that advantage merely because an entire property of which it forms a part is condemned? An orchard does not ordinarily bear any particular relation to other property, and how is it

material to the owner as bearing on the question whether or not he shall forcibly be deprived thereof whether it constitutes the whole or part of his property? The statute makes the same argument applicable to gardens, orchards, trade fixtures and factories. The amendment of 1911 emphasizes the idea that the Legislature intended to protect such property without any qualifications or exemptions other than that it should have existed for one year, preventing thereby efforts of an owner to transform his property for the purpose of defeating condemnation.

" Statutes should be read according to the natural and most obvious import of the language, without resorting to artificial or forced constructions, for the purpose of either limiting or extending their operation." (*Matter of New York & Brooklyn Bridge,* 72 N. Y. 527, 529.) That wholesome rule is particularly true of a statute which deprives the owner of his property without his consent. It is elementary that statutes authorizing the power of eminent domain should receive not a liberal but a strict construction. (*Matter of Poughkeepsie Bridge Co.,* 108 N. Y. 483; *Ontario Knitting Co.* v. *State,* 205 id. 409, 416; *Matter of Water Commissioners of Amsterdam,* 96 id. 351; *Washington Cemetery* v. *Prospect Park & Coney Island R. R. Co.,* 68 id. 591, 594; *Adams* v. *Saratoga & Washington R. R. Co.,* 10 id. 328, 330.) We cannot construe this statute as the plaintiff desires without forcing into it a meaning which the phraseology of the statute does not imply or even suggest. In construing statutes it is the duty of courts not to have regard to the effect of such construction on particular cases but to effectuate the intention of the framers of the statute who are responsible for the language employed and who have the power to mould and change the language so as to give expression to their judgment.

The judgment and order should be reversed and the proceeding dismissed, with costs.

All concur, except JOHN M. KELLOGG, P. J., and WOODWARD, J., dissenting, on the referee's opinion and report.

Judgment and order reversed and proceeding dismissed, with costs.