CITY OF BINGHAMTON, Plaintiff, *v.* FRANK BUONO and Others, Defendants.

Supreme Court, Broome County, December 27, 1924.

**Condemnation** — proceedings to condemn land in city of Binghamton for school site — defendants' property had been used for trade for more than one year prior to commencement of proceedings — city endeavored to purchase defendants' land — fact that defendants will be deprived of business not defense — premises having been used for more than one year before commencement of proceedings for purposes of trade or manufacture cannot, under Education Law, § 464, subd. 4, be condemned for school site — said subdivision covers both land and buildings thereon — said subdivision not repealed by Education Law, § 464, subd. 5 — Second Class Cities Law, § 103, and Education Law, § 876, do not make Education Law, § 464, subd. 4, inapplicable — said subdivision not repealed by implication by Laws of 1917, chap. 786, § 3.

In condemnation proceedings by the city of Binghamton to acquire property for a school site the evidence shows that the city in good faith endeavored to agree with the defendants for the purchase of the land but was unable to do so.

It is no defense to the proceedings that if the property is acquired by the city it will result in depriving the defendants of carrying on their business in the immediate vicinity, thereby producing great loss to them.

Inasmuch, however, as the defendants' property had been used for trade or manufacture for more than one year prior to the commencement of the proceedings, the city is prohibited from condemning the land for a school site by subdivision 4 of section 464 of the Education Law which provides that fixtures or erections for the purpose of trade or manufacture which have existed for more than one year prior to the beginning of condemnation proceedings cannot be acquired without the consent of the owner.

Subdivision 4 of section 464 of the Education Law prohibits the city from acquiring the land as well as from acquiring the fixtures and erections thereon.

Said subdivision 4 was not repealed by subdivision 5 of section 464 of the Education Law which was added by chapter 195 of the Laws of 1920 and amended by chapter 3 of the Laws of 1924.

Section 103 of the Second Class Cities Law which provides that the commissioner of public works of a city may, except as otherwise provided by law, acquire land for municipal purposes by condemnation, must be construed with subdivision 4 of section 464 of the Education Law, both statutes being general, and as so construed does not remove the limitation contained in said subdivision 4.

Section 876 of the Education Law which specifies who shall have authority to act in the acquisition of real property for school purposes does not override said subdivision 4 or repeal the same by implication.

Said subdivision 4 was not repealed by implication by section 3 of chapter 786 of the Laws of 1917, which provides that all acts or parts of acts, general or special, inconsistent with the provisions of the Education Law are repealed, for said subdivision 4 is not inconsistent with the other provisions of the Education Law.

The fact that the construction placed on subdivision 4 of section 464 of the Education Law may possibly prevent a city of the size of Binghamton from constructing a school building within the city limits is of no concern to the courts but is a matter which must be remedied by the Legislature.

CONDEMNATION proceeding by the city of Binghamton to acquire property of defendants for a site for a public school.

*William L. Lewis, Corporation Counsel,* for the plaintiff.

*Mangan & Mangan,* for the defendants Frank and Rose Buono.

RHODES, J.:

. This proceeding has been instituted by the city of Binghamton to acquire by condemnation property of the defendants Buono for the purposes of a site for a public school to be known as the Christopher Columbus School, which it is proposed to locate on a plot of ground bounded upon the north by Hawley street, on the west by Fayette street and on the east by Stuyvesant street, said plot having a depth southerly from Hawley street of two hundred and forty-five feet. The defendants' property, forming a part of the proposed site, is located at the southeast corner of the intersection of Hawley and Fayette streets and comprises the northwest corner of the proposed site, such premises of defendants having a frontage on Hawley street of forty-two feet and a depth along Fayette street of seventy-five feet. The northerly part of the premises, fronting on Hawley street, is and for more than a year last past has been used for business and commercial purposes; the rear portion of the building is and for more than a year last past has been used as a dwelling.

Defendants Buono interpose several defenses to the attempt of the city to acquire said property by condemnation, and they are the defendants referred to herein. One defense is that it is not necessary for the city to acquire the premises because of the fact that all the rest of the land necessary for said site has been acquired and that there is sufficient room upon said plot to place said proposed building without the acquisition of defendants' land. It appears, however, that the balance of the proposed site is to be used for an athletic field and for purposes incidental to school property. The city necessarily has some latitude and discretion as to the amount of property to be acquired so long as the amount is reasonably necessary for the public use intended. It is manifest that the amount of land which it should be permitted to acquire is not limited to the land which the school buildings will cover, but that it extends to as much more as will be requisite for the reasonable and proper use and enjoyment thereof as a school site.

As a further defense defendants allege that the plaintiff has not in good faith made an effort to agree with defendants for the purchase of their premises. It appears that officials of the city approached the owner relative to acquiring the premises by purchase. The owner stated he would sell to the city for a price named in

case the proper city officials would amend the zoning ordinance in such a way as to permit him to occupy and use another piece of property at the northwest corner of Fayette and Hawley streets for commercial purposes, stating that in case he was not permitted to use the property at the northwest corner for commercial purposes he would in no event be willing to sell to the city the premises involved herein. I think the facts established upon the hearing are sufficient to show that the city has in good faith endeavored to agree with the defendant for the purchase of the land and that the plaintiff has not been able to reach such agreement. Defendants also set up as an alleged defense that if the property is acquired by the city it will result in depriving the defendants of carrying on their business in the immediate vicinity, producing great loss to them thereby. Whether or not this be true, it is not a defense to be considered upon the question as to whether or not the city has the right to acquire the premises. The loss incidental to the taking of the property in condemnation is a matter to be considered before the commissioners awarding compensation. Any other loss, not the subject of compensation, must be borne, as in all similar cases, as an incident to the exercise of the right of eminent domain, and will be *damnum absque injuria.*

Defendants also interpose a further defense to the effect that defendants' premises have for more than a year last past been used in connection with trade, commerce and business, and that, therefore, the city is prohibited from acquiring the property by condemnation by virtue of the provisions of section 464 of the Education Law, as amended by chapter 782 of the Laws of 1911. So far as material here that section provides as follows: " The following property cannot be acquired without the consent of the owner: * * * 4. Fixtures or erections for the purpose of trade or manufacture, which have existed for a period of one year prior to the beginning of the condemnation proceedings." There is no question but that the premises under consideration have been used for more than a year for the purpose of trade or manufacture. Plaintiff, however, insists that section 464 is not now controlling by reason of later enactments of the Legislature incorporated in the provisions of the Education Law, which, in effect, modify or repeal the prohibition of section 464.

Plaintiff argues that assuming the section has not been repealed, it prohibits the taking by condemnation of fixtures and erections only and does not prohibit the taking of the real property upon which such fixtures and erections are located. This construction would destroy the purpose and intent of the provision. It may be argued that it would be possible to remove fixtures used for the

purpose of trade or manufacture, but it is manifest that if land may be acquired upon which are " erections for the purpose of trade or manufacture " leaving to the owner the necessity or privilege of removing the same, the purpose of the statute would be defeated. As was said by Mr. Justice Cochrane, writing the opinion in *Board of Education of Malone* v. *O'Rourke* (191 App. Div. 317, 320): " In my opinion structures for the purposes of trade or manufacture which have existed for one year are under all circumstances exempt from condemnation. The Legislature intended to protect such property for the reason that it might be a peculiar source of income to its owner, interference with which in the judgment of the Legislature was unwise." That statement was *obiter* for the reason that the particular subdivision of this section was not under review. In that case the court was construing subdivision 2 of this section which prohibits the acquiring by condemnation of gardens, orchards or any part thereof. The court held that such garden land could not be acquired by condemnation without the consent of the owner, and further said: " ' Statutes should be read according to the natural and most obvious import of the language, without resorting to artificial or forced constructions, for the purpose of either limiting or extending their operation.' (*Matter of New York & Brooklyn Bridge*, 72 N. Y. 527, 529.) That wholesome rule is particularly true of a statute which deprives the owner of his property without his consent. It is elementary that statutes authorizing the power of eminent domain should receive not a liberal but a strict construction."

The manifest purpose of the Legislature was to prohibit the acquiring of commercial property by condemnation in cases such as this. To permit the acquisition of land, leaving to the owner the structures with the necessity of removing them, would oftentimes destroy the enterprise which it was the policy of the Legislature to conserve and protect, and would defeat the legislative intent. The decision above cited was made in March, 1920. The section in question was amended by the Legislature by chapter 195 of the Laws of 1920, which took effect April 14, 1920. The amendment consisted of the addition of subdivision 5 of said section which, as amended by chapter 3 of the Laws of 1924, reads: " The second and third subdivisions of this section shall not be construed as prohibiting the acquisition by condemnation of the whole of a city or village lot together with the erections and improvements thereon, nor shall subdivision 1 of this section be construed as prohibiting the acquisition by condemnation of property in a city or union free school district for which a superintendent of schools has been appointed as provided by this chapter." The amendment

was evidently adopted to correct the situation to which the attention of the Legislature had been called by the decision above cited, but it is significant that the amendment did not repeal nor change the provisions of subdivision 4 of the section, which subdivision is here invoked.

Plaintiff further insists that the section referred to is not controlling for the reason that section 103 of the Second Class Cities Law provides: " Whenever any real estate or interest therein shall be required for any municipal purpose, *except as otherwise provided by law,* the commissioner of public works may acquire for the city the necessary land and real estate by gift or by purchase,  *  *  * or by the proceedings specified in the condemnation law." This section is not necessarily inconsistent with section 464 of the Education Law. They are both general statutes and should be construed together. Section 103 of the Second Class Cities Law permits the acquisition of real estate " except as otherwise provided by law." Section 464 of the Education Law is an exception, limiting the property which may be thus acquired.

It is also claimed by plaintiff that section 876 of the Education Law is controlling, and that it overrides the provisions of section 464 of such law. Section 876, added by chapter 786 of the Laws of 1917, as amended by chapter 252 of the Laws of 1918, simply defines who shall have authority to act in the acquisition of real property for school purposes. It provides that the board of education may purchase or condemn necessary real property, except that in a city in which the common council, board of contract and supply, or other city officers or body are authorized and empowered by law to acquire title to real property for school purposes, such council, board, officers or body shall continue to possess such powers and exercise the same including the power to condemn real property, *under the provisions of law relating thereto.* This section should also be construed in connection with section 464. It is not a repeal by implication of section 464, but it is to be exercised subject to the limitations thereof.

Finally, plaintiff insists that the provisions of subdivision 4 of section 464 have been repealed by implication by the provisions of section 3 of chapter 786 of the Laws of 1917, which provides in part: "All acts or parts of acts, general or special, inconsistent with the provisions of this act are hereby repealed." As above suggested, subdivision 4 of section 464 is not inconsistent with the other provisions of the act. It creates a limitation upon the powers to acquire real property by condemnation, by its terms excepting property used for commercial purposes from the kinds and classes of real property which thus may be acquired.

It is a familiar rule of construction that repeals by implication are not favored and will not be indulged in if there is any other reasonable construction. As was stated in *McCartee* v. *Orphan Asylum Society* (9 Cow. 437, 506): " It is a well settled rule, that where there is a discrepancy or disagreement between two statutes, such exposition should be made as that both may stand together. * * * That repeals by implication are things disfavored by the law, and never allowed of but where inconsistency and repugnancy are plain and unavoidable; 'for these repeals carry along with them a tacit reflection upon the legislators, that they should ignorantly, and without knowing it, make one act repugnant to and inconsistent with another; and such repeals have been ever interpreted so as to repeal as little of the preceding law as possible.' It is also a rule of law, that all acts in *pari materia*, are to be taken together as if they were one law."

There is nothing from which it can be clearly implied that the Legislature intended to repeal the prohibition against the condemnation of lands used for commercial purposes. It is certain that the Legislature had some reason which it deemed sufficient for enacting such a statute. Whatever the impelling motive, its legislative act is supreme and final. The courts are concerned only in construing and enforcing the law as made. The Legislature enacts the law, the court construes and interprets the law.

It is insisted on behalf of plaintiff that if the provisions of subdivision 4 of section 464 of the Education Law are valid, any city of the size of Binghamton will be prevented from constructing any school building within the city limits. Possibly this may be true, but the remedy lies with the Legislature rather than a usurpation of its authority and functions by so-called judicial legislation. As was well said in the case of *Board of Education of Malone* v. *O'Rourke (supra)*: " In construing statutes it is the duty of courts not to have regard to the effect of such construction on particular cases but to effectuate the intention of the framers of the statute who are responsible for the language employed and who have the power to mould and change the language so as to give expression to their judgment."

For the reasons stated, the petition should be dismissed, with costs.