Mitchell D. Schweitzer, J.
Defendants move for an inspection of the Grand Jury minutes of three separate indictments (1298/62, 1299/62 and 1300/62), charging them in each thereof with perjury, first degree, and related crimes.
It is contended by defendants that the indictments arose from a state of facts based entirely upon the attempted compliance by defendants with the mandate of rules or regulations of the Temporary State Housing Rent Commission (hereinafter referred to as the “ Commission ”), which rules or regulations were a nullity because they were not filed in accordance with the requirements of section 8 of article IV of the New York State Constitution. If the charges did in fact arise from conduct based upon the requirements of rules or regulations which were not filed pursuant to said constitutional provision, then the occurrences arising from action predicated upon these rules or regulations cannot be the basis for criminal charges.
Specifically, the “ rules ” or “ regulations ” which defendants claim were not filed as required by the Constitution are publications of the Commission entitled “Landlord’s Application for Increase in Maximum Rental” (hereinafter called “Landlord’s Application”) and the “ Schedule of Rental Values.” It is not disputed that these documents were not filed with the Secretary of State pursuant to section 8 of article IV.
Section 8 of article IV of the New York Constitution provides that: “ No rule or regulation made by any state department, *53 board, bureau, officer, authority or commission, except such as relates to the organization or internal management of a state department, board, bureau, authority or commission shall be effective until it is filed in the office of the department of state. The legislature shall provide for the speedy publication of such rules and regulations, by appropriate laws.”
In interpreting this provision of the Constitution, the Court of Appeals in People v. Cull (10 N Y 2d 123) made it clear that an administrative agency could not avoid the necessity of filing a rule or regulation by merely attaching a different name to the pronouncement. So long as an agency’s statement had the quality of a “ rule ” or “ regulation ” it would be so considered, regardless of how labeled by the issuing agency. The court further stated that the clear purpose of section 8 of article IV was the creation of a central source where the public could 1 be made aware of the existence of “laws” created by/ administrative bodies and of their scope.
The significance of the Cull case is clarified when the facts present in that case are examined. Cull was convicted of exceeding a speed limit posted by the State Traffic Commission. The speed limit had been promulgated by an “ order ” of the Commission which “ order ” was never filed with the Secretary of State. Thus, when Cull violated the 35-mile speed limit, there was absolutely nothing filed with the Secretary of State , from which a citizen could become aware of the source of, or authority for, the posted limit.
The scope of People v. Cull (supra) and the import of section 8 of article IV of the New York State Constitution were further clarified by the Court of Appeals in People v. O’Malley (11 N Y 2d 943). In O’Malley the defendant violated a speed limit posted by the New York State Thruway Authority pursuant to a portion of a filed regulation under which the Authority merely stated that exceeding any lesser posted speed limit than the general 60-mile-per-hour speed limit was a violation. It was held that this was sufficient compliance with section 8 of article IV without it being necessary to file a statement of each lesser speed to bo posted. The result in the O’Malley case is entirely consistent with the requirement of Cull that an agency creating a “law” by administrative act centrally file it so as to give the public a basis for determining its scope and evaluating j its “ legality, effectiveness or accuracy ” (People v. Cull, supra, p. 128). Once the basic rule or regulation is filed, every. act ? performed in its execution need not be recorded with ■ the: Secretary of State.
*54 The first question presented by this motion is whether the two documents issued by the Commission constitute “ rules ” or “ regulations ”, within the meaning of the State Constiution, so that the failure to file them vitiates the effectiveness of Commission “ law ” relative to the subject matter. Even more critical, is the issue of whether or not the conduct of defendants was violative of any valid “rule” or “regulation” of the Commission.
It is necessary to first determine what constitutes a “ rule ” or ‘ ‘ regulation ”. “ The term, ‘ rule or regulation ’, has not, it is true, been the subject of precise definition, but there can be little doubt that, as employed in the constitutional provision, it embraces any kind of legislative or quasi-legislative norm or prescription which establishes a pattern or course of conduct for the future.” (Cull, supra, p. 126.)
A rule or regulation, as so- defined, embodies as its two essential components:
1. That the pronouncement be the administrative equivalent of a statute of the Legislature (within the vires of its enabling statute), i.e., a law delineating the Administrator’s powers vis-a-vis the public and compelling compliance to its terms on the part of those within the regulatory ambit. (See Columbia System v. United States, 316 U. S. 407, 418.)
2. That such pronouncement formulate a standard of conduct for the future to be applicable to -all coming within its purview. (See Prentis v. Atlantic Coast Line Co., 211 U. S. 210, 226.)
Each of the two alleged rules or regulations, Landlord’s Application and the Schedule of Rental Values, will be treated, in turn, to determine its true nature and quality.
An examination of the requirements contained in the printed form and affidavit, Landlord’s Application, leads to the inexorable conclusion that the nature of such contents compels the classification of each of the requirements set forth therein as a Cull case rule or regulation.
No case, however, appears to have decided whether a form should be filed pursuant to section 8 of article IV of the Constitution.
The Federal Administrative Procedure Act expressly includes forms with those items which must be.published in the Federal Register (U. S. Code, tit. 5, § 1002).
Moreland Act Commissioner R. M. Benjamin, in his Report on New York State Administrative Adjudication (1942) states (p. 316): “ Agencies often prescribe the use of particular forms by those subject to their jurisdiction (e.g., forms of annual reports by persons subject to regulation, of tax returns, of *55 applications for licenses, of petitions, answers or other papers in qnasi-judicial proceedings). It is not clear whether the constitutional provision requires the filing of a particular form, as a condition of making the use of that form obligatory, or whether the filing of a regulation prescribing the use of a specified form prepared by the agency would be sufficient. Whether or not filing of forms is necessary, however, it will, again, be a wise precaution for the agency to file them. Sometimes a form may contain instructions which amount in substance to procedural or .substantive regulations. If the agency desires to give legal effect to such instructions, it must, in my judgment, either file the form or file regulations in which the substance of the instructions is repeated.” (Emphasis added.)
Accordingly, the promulgation and filing of a parent rule or regulation (or parent rules or regulations) which contains the substance of each of the requirements of a form (Landlord’s Application) should obviate the necessity for filing the form itself and constitute compliance with section 8 of article IV. That this does represent the better interpretation of the constitutional mandate receives support from United States v. Morton Salt Co. (338 U. S. 632) and People v. O’Malley (11, N Y 2d 943, supra).
United States v. Morton Salt Co. (supra) involved an analogous situation. In that case, the agency concerned ordered defendant to file a report containing a complete statement of the “ prices, terms, and conditions of sale of salt, together with books or compilations of freight rates used in calculating delivered prices, price lists and price announcements distributed, published or employed in marketing salt from and after January 1, 1.944” (id., p. 637). Subdivision (b) of section 6 of the Federal Administrative Procedure Act (U. S. Code, tit. 5, § 1005, subd. [b]) proscribes any requirement of a report or other investigative demand “ in any manner or for any purpose except as authorized by law”. The agency had duly promulgated rule XXVI which required a party to ‘1 file with the Commission, from time to time thereafter, further reports in writing, setting forth in detail the manner and form in which they are complying ” (id., p. 646). The court concluded “ that the Commission’s published Rule XXVI announced the right it claims in this case ”, i.e., to demand the specific information set forth above (id., p. 646).
In light of United States v. Morton Salt Co. (supra) and People v. O’Malley (supra) and the position taken by Moreland Act Commissioner R. M. Benjamin, the better view would be to hold that the Commission has complied with the requirements *56 jof the constitutional mandate if it has filed a parent rule or regulation (or rules or regulations) which contains the substance jof each part of the requirements set forth in the application which might be deemed to be a rule or regulation.
Study of the Landlord’s Application reveals that the following requirements contained therein do constitute substantive rules or regulations; and study of the regulations duly promulgated and filed by the Commission reveals that for each such requirement in the application the Commission has filed a parent rule or regulation which contains the substance of the requirement in the application (as indicated and more fully set forth below):
1. To apply for an increase in maximum rent, the landlord must use and fill in the form prescribed by the Commission (authorized by §§ 33 and 81).
2. In a proceeding to adjust maximum rent under section 33 (subd. 1, par. a) of the State Rent and Eviction Regulations the following factors, amongst others, will be taken into consideration:
a. Rent being requested.
b. Tenant’s consent to the improvement (and presumably to the increase in rent requested by landlord for such improvement).
c. The value of the improvement as evidenced by a description and the cost thereof (authorized by § 33).
3. The Temporary State Housing Rent Commission requires as proof of the existence of the factors in number 2 above:
a. Tenant’s signed statement of consent;
b. Bill or other evidence of expenditure (authorized by § 85).
4. Landlord must certify that he is maintaining all essential services provided or required to be provided with the housing accommodations involved as of March 1,1950 or any subsequent date determining the maximum rent and that he will continue to maintain such services .so long as the increase in such 'maximum rent which may be granted continues in effect (authorized by § 33).
5. The landlord will verify the application (authorized by § 81).
As indicated above, the parent regulations consist of the following sections of the State Rent and Eviction Regulations duly promulgated and filed with the Secretary of State (minor changes have been made in the Rent and Eviction Regulations, but the substance of the following has remained constant for the period within which the court is concerned):
*57 A. Section 33 “ Grounds for increase of maximum rent. This section sets forth specific standards for the increase of a maximum rent. In applying these standards and entering an order adjusting a maximum rent, the Administrator shall take into consideration all factors bearing on the equities involved, subject to the general limitation that the adjustment can be put into effect without dislocation and hardship inconsistent with the purpose of the Act. * * *
“ No landlord shall be entitled to any increase in the maximum rent under this section unless he certifies that he is maintaining all essential services provided or required to be provided with the housing accommodations involved as of the date of the issuance of the order adjusting the maximum rent and that he will continue to maintain such services so long as the increase in such maximum rent continues in effect. * * *
‘ ‘ Any landlord may file an application to increase the maximum rent otherwise allowable, on forms prescribed by the. Administrator, only on one or more of the following grounds:
“ 1. Increased service or facilities, substantial rehabilitation, major capital or other improvements.
“ The Administrator may grant an appropriate adjustment of a maximum rent where he finds that:
“ a. the landlord and tenant by mutual voluntary loritten agreement, subject to the approval of the Administrator, agree to a substantial increase in dwelling space or an increase in the services, furniture, furnishings or equipment provided in the housing accommodations; or the tenant has accepted and is obtaining the benefit of increased services, furniture, furnishings or equipment ”. (Emphasis added.)
It would appear to be beyond the realm of controversy that the words ‘ ‘ increase in equipment ’ ’ in the context of section 33, subd. 1, par. a) which sets forth the bases for an increase in maximum rent encompass cost and description of such equipment or any other means of ascertaining value (United States v. Morton Salt, supra; People v. O’Malley, supra). Furthermore, section 85 of the State Bent and Eviction Begulations, duly filed with the Secretary of State, authorizes the Local Bent Administrator to “ require the filing of such * * * evidence * * * or other material relevant to the proceeding.” At the very least, cost of equipment is “ relevant ” in a proceeding to determine an increase in maximum rent based upon an increase in equipment supplied by the landlord.
In like manner, the requirement that landlord fill in “ Bent provided in lease” or “Bent being requested for housing *58 accommodations ” clearly comes within the purview of an application for an increase in maximum rent predicated upon an agreement between tenant and landlord to accept the increase in equipment as a condition precedent to Landlord’s Application for an increase in the maximum rent. That the request by a landlord should be for a specific amount is further supported by the fact that such increase is not governed by the statutory 15% limit. The whole tenor of a section 33 (subd. 1, par a) increase is that it is predicated upon an agreement between landlord and tenant.
B. Section 81. “ A proceeding is instituted in a Local Rent Office by a landlord or a tenant with the filing of an application for adjustment of rent, for a certificate of eviction, or for other relief provided by the Act or these Regulations. Such application shall be verified by the applicant and filed with the Local Rent Administrator for the area within which the housing accommodation is located upon the appropriate form issued by the Administrator in accordance with the instructions contained in such forms.” (Emphasis added.)
0. Section 85. “ At any stage of a proceeding the Local Rent Administrator may: * * *
“ 2. Make such investigation of the facts, hold such conferences, and require the filing of such reports, evidence, affidavits, or other material relevant to the proceeding.” (Emphasis supplied.)
Thus, it becomes evident that the Housing Commission has promulgated and duly filed a parent regulation containing the substance of every part of Landlord’s Application which might be deemed a rule or regulation. Furthermore, two of the parent regulations specifically direct the use of ‘1 forms prescribed by the Administrator ”. To further require, in this case, the filing of the form itself would reduce the stature of the constitutional mandate to but empty sound and would be contrary to the thrust of United States v. Morton Salt (supra); People v. O’Malley (supra); Benjamin, Report oñ New York State Administrative Adjudication, and common sense.
Although Landlord’s Application, standing alone, should be deemed “ effective ” pursuant to section 8 of article IV of the New York Constitution, some thought must be directed to defendants’ contention that the Landlord’s Application incorporates the Schedule of Rental Values, which, because the schedule is unfiled, renders the whole application ineffective. Such incorporation, defendants assert, arises from the requirement that landlord provide both the cost of the equipment concerned and the rent increase requested.
*59 It has been demonstrated above that both these requirements were authorized by a duly promulgated and filed parent regulation. Nor do defendants deny that the application itself contains no express mention nor reference to the Schedule of Rental Values.
On the other hand, it cannot be gainsaid that each 1 ‘ requested rent increase ” was predicated upon the seven-year amortization standard for kitchen cabinets contained in said Schedule of Rental Values and that the Housing Commissioner issued the schedule for the public to consult with relation to subdivision 1 of section 33 application for increased maximum rent.
Whether or not Landlord’s Application does incorporate the Schedule of Rental Values need concern the court only if said schedule, which has not been duly filed, is classified as a rule or regulation..
After careful study and deliberation, this court concludes that the Schedule of Rental Values cannot be deemed to come within the Cull case (supra) definition of a rule or regulation.^ Missing as an essential ingredient is the element that a rule or ¡ regulation must be of legal effect, i.e., the administrative counter- j part of a statute of the Legislature, legally binding both the! Administrator and those within its regulatory ambit. (It should! be noted, at the outset, that this element clearly distinguishes the case before the court from Wirtz v. Lobello, 1 A D 2d 416 in which the agency promulgated and duly filed minimum wage orders.)
That the Schedule of Rental Values was never intended to possess such legal effect cannot be denied in view of the manner of its issuance and its impact. This schedule neither conferred a right nor imposed a duty.
Almost from its inception, the Commission, because of the nature of the statute it was empowered to effectuate, received requests for advisory statements and opinions concerning the application and interpretation of the Emergency Housing Rent Control Law. This situation was not unlike that facing other agencies enforcing analogous statutes. (For a discussion of this practice, see Davis, Administrative Law Treatise, § 4.09 [1958].)
The Commission was faced with the problem of expeditiously determining countless applications, many of which would necessarily be based on similar fact situations. In order to facilitate compliance with filed regulations in a manner so as to obviate delays upon technical grounds, it became advisable to issue from time to time authoritative advisory bulletins designed as aids to those dealing with the Commission and *60 directed toward answering those inquiries most likely to arise under existing rules and regulations.
For the above obvious reasons, the “State Bent Administrator inaugurated the policy of publishing official Administrator’s Opinions dealing with problems of general applicability ” (Foreword to Opinions of the State Bent Administrator [1957]). Such practice was expressly authorized by section 117 of the State Bent and Eviction Eegulations which provides: “ 1. Official interpretations of general applicability with respect to the provisions of the Act or those Eegulations shall be issued only by the Administrator. ” As an illustrative example of the scope of such advisory opinions, and with particular reference to the problem now before the court, it should be noted that as a part of Opinion No. 117, the Administrator declared: “ After detailed study and investigation, the Administrator has now determined that a rental value schedule should be established governing rent adjustments for rewiring as the most effective method of eliminating abuses which have seriously impaired the merit of the cost recoupment formula.” (Opinions of the State Bent Administrator [1957].) The Administrator then set forth a Schedule of Eental Values relating to the problem raised in this opinion. (For like results, see, amongst others, Opinions 95 and 121.)
In the same manner, the Housing Administrator issued Bulletins, one of which is the Schedule of Eental Values, originally Bulletin 40, advising those coming within its regulatory jurisdiction of the probable effect to be given certain delineated improvements. Such bulletin is usually classified as an advisory opinion or an interpretive ruling. ‘ ‘ Administrative officials frequently announce their views as to the meaning of statutes or regulations. Generally speaking, it seems to be established that ‘ regulations ’, ‘ substantive rules ’ or ‘ legislative rules ’ are those which create law, usually implementary to an existing law; whereas interpretive rules are statements as to what the administrative officer thinks the statute or regulation means ’ ’ (Gibson Wine Co. v. Snyder, 194 F. 2d 329, 331; see, also, United States v. 353 Cases, etc., 247 F. 2d 473, 480, cert. denied sub nom. McFarling v. United States, 358 U. S. 834). In like manner, /and for the same basic reason, that an advisory opinion does not create law, it has been held that an advisory opinion lacks binding effect (Federal Crop Ins. Corp. v. Merrill, 332 U. S. 380 [1947]; see Davis, Administrative Law, § 4.09 [1958]; Schwartz, An Introduction to American Administrative Law, p. 244 et seq. [1962]; Newman, “ Should Official Advice Be *61 Reliable? Proposals as to Estoppel and Related Doctrines in Administrative Law,” 53 Col. L. Rev. 374 [1953]).
It can thus be stated categorically that the Schedule of Rental Values is ineffective as a rule or regulation, not because it was not filed, but rather it was not filed because it was not intended to be, and by its nature could not be an administrative rule or regulation with legal force and effect.
(That the element “ law ” is the sine qua non component of “ section 8 of article IV of rule or regulation ” is borne out by reference to the Revised Record of the Constitutional Convention of 1938, vol. II, pp. 941, 945, 946, 947, 955, 959, 964.)
When an agency determination has referred to the schedule or to an interpretation analogous to the Schedule of Rental Values, the courts have treated the use of such schedule or construction as an exercise of administrative discretion in deciding the particular matter (Matter of Marida Holding Co. v. Weaver, 4 A D 2d 693;Matter of Philip-Toby Realties v. Weaver, 8 A D 2d 206, appeal dismissed 11 N Y 2d 879; Matter of Fifty Mark Realty v. Herman, 24 Misc 2d 609; Sarrel v. Telesford, 65 N. Y. S. 2d 403, affd. 271 App. Div. 999).
In cases in which the legal effect of Landlord’s Application was raised, the courts have taken the following position:
“ The ‘ Report of Lease ’ is primarily for the Rent Commission’s statistical and supervisory purpose; it does not create or vest rights.” (Fifth Ave. Realty Corp. v. Lynch, 10 Misc 2d 391, 393.)
“ [T]his court cannot agree with petitioner’s contention that, by the acceptance of a report of lease for filing by the Local Rent Administrator, the Rent Commission has waived any rights to invalidate the lease or to fix different maximum rents ” (Matter of Wolgor Realty Corp. v. Herman, 25 Misc 2d 374, 376, affd. 11 A D 2d 935).
“ The acceptance by the local rent administrator of a lease report does not warrant the conclusion that the State Rent Commission has approved anything.” (Matter of Ft. Tryon Gardens v. Weaver, 11 Misc 2d 297, 300.)
Matter of Alamac Estates v. McGoldrick (2 N Y 2d 87) is cited by defendants. However, this case is not apposite to the instant ease. The Alamac case was an article 78 proceeding which posed the question of whether the Rent Administrator had exercised his administrative discretionary powers in a manner which was so fundamentally unfair as to justify judicial interference. In that case the Local Administrator had granted an increase in rent consistent with the policy expressed in an advisory *62 schedule to which the commission was then adhering. This increase was subsequently affirmed by the State Rent Administrator, although the pertinent schedule had been revised during this interim period. The case was subsequently remitted for further consideration and a new order was issued based upon said revised schedule. The sole question before the court was whether or not the Administrator had abused his discretion. It indicated this by a specific determination based upon the Administrator being found to have abused his “ administrative discretion” (Matter of Alamac Estates v. McGoldrick, supra, p. 90).
The court’s reference to the schedule in the Alamac case as a “ rule ” has little or no meaning. The use of this expression is not even obiter dictum, in the context in which it appears. As the word “rule ” appears it is obviously being used in a nontechnical sense. The question of what constitutes a rule was not before the court. Not only was this issue not being determined, but clearly the court was not even attempting to voice a gratuitous opinion thereon. It is further made obvious that the Court of Appeals did not consider a schedule a “ rule ” or “ regulation ” in the technical sense, since if it had, then the determination of the Administrator in Alamac would not have involved an “ abuse of administrative discretion ”, but adherence to a legal mandate.
After examining and evaluating the entire structure of administrative rules and regulations relative to the administration of rent control at the time involved, it is clear that various rules or regulations duly filed in compliance with the Constitution create a mandatory procedure which defendants were purportedly following when they committed those acts upon which these indictments are founded. These rules advise the public that all applications must be on commission forms (§§ 33 and 81), the criteria the Commission will use in determining applications for an increase in rent (§§ 33 and 81), the proof required of an applicant for an increase (§85) and that all applications must be verified (§81). No necessity existed for the filing of. the advisory schedule or of forms in order to adhere to the purpose, intent and scope of section 8 of article IV of the New York State Constitution.
Based upon the aforesaid, accordingly, the motion is denied.