Van Voorhis, J.
(dissenting). The defendant, who had been charged with driving while intoxicated, moved to suppress evidence concerning a blood test, which he submitted to after his arrest by a State Trooper, upon the ground that the blood was unlawfully taken. Section 1194 of the Vehicle and Traffic Law provides for administering a chemical test “ in accordance with the rules and regulations established by the police force ” of which the arresting officer is a member.
The Justice of the Peace held that, if the State Police had any rules or regulations pertaining to the administration of chemical tests, they were not effective since not filed in the Department of State in accordance with section 8 of article IV of the New York Constitution.
The County Court held that the result of a blood test is not admissible in evidence unless made under the conditions set forth in section 1194 of the Vehicle and Traffic Law and that the determination of the Justice of the Peace must be affirmed.
It seems to me that the decisions of the Justice of the Peace and the County 'Court were correct. The People contend that the rules and regulations established by the police force relative to the taking of blood tests pertain to the organization or internal management of the New York State Police, and do not establish a standard of conduct so far as the public is concerned citing People v. Widelitz (39 Misc 2d 51, 54). It is argued, for reversal, that how blood tests are taken to aid in determining intoxication or impairment of ability to operate a motor vehicle is no concern of the accused, but is analogous to departmental regulations *667 governing the use of uniforms, police ears or the general conduct of a trooper before and after an arrest.
For two reasons it seems to me that the People are mistaken. First, and most important, the procedure by which a blood test is taken importantly affects its accuracy as an index of the alcoholic content of the blood, to say nothing of antisepsis and the other factors bearing on the safety and convenience of the alleged offender. The result of the blood test can be considerably affected, for instance, if the syringe is inserted so as to mix with the blood sample alcohol that has been rubbed upon the skin for sterilization. A driver submitted to the test is surely entitled to object if it be not administered in accordance with the rules and regulations established pursuant to subdivision 1 of section 1194 of the Vehicle and Traffic Law. It was designed by the Legislature that such rules would establish standards of conduct so far as the public is concerned.
The second reason on account of which this is so is not only to insure that the blood test will be taken by proper methods, but also to enlighten the accused and his own physician concerning the manner in which the People’s sample is taken so that the accused, if he so desires, can have another blood test taken immediately afterwards by his own physician according to the same method in order to verify the accuracy of the result announced by the police. The mere fact that a blood test is made by the police does not insure its accuracy; a defendant is entitled to contest what the police say, if he so desires, by another test made on his own.
It seems to me that, for both of these reasons, these “rules and regulations ”, as they are termed in subdivision 1 of section 1194 of the Vehicle and Traffic Law, are what was intended by section 8 of article IV of the State Constitution, added in 1939, in prescribing that “ No rule or regulation ” of any State department, board, bureau, officer, authority or commission, ‘ ‘ except such as relates to the organization or internal management ’ ’, shall be effective ‘ ‘ until it is filed in the office of the department of state. ’ ’
In People v. Cull (10 N Y 2d 123), holding invalid an unfiled speed limit ordered by the State Traffic 'Commission, the opinion states, per Fuld, J. (p. 126): * ‘ The term, ‘ rule or regulation ’, has not, it is true, been the subject of precise definition, but there can be little doubt that, as employed in the constitutional provi *668 sion, it embraces any kind of legislative or quasi-legislative norm or prescription which establishes a pattern or course of conduct for the future. The label or name employed is not important and, unquestionably, many so-called ‘ orders ’ come within the term. (See, e.g., Revised Record of Constitutional Convention of 1938, Vol. 2, p. 943 et seq.; see, also, Wirtz v. Lobello, 1 A D 2d 416; 1 Benjamin, Administrative Adjudication [1942], p. 315; cf. Mogis v. Lyman-Richey Sand & Gravel Corp., 189 F. 2d 130, 190 F. 2d 202, cert. den. 342 U. S. 877.) ”
The Gull case seems to me to be conclusive, as both courts below have held, and, therefore, the order appealed from should be affirmed.
Order reversed, etc.