In the Matter of NEW YORK STATE ASSOCIATION OF LIFE UNDERWRITERS et al., Respondents, v. SUPERINTENDENT OF INSURANCE OF THE STATE OF NEW YORK et al., Appellants.

Third Department, October 21, 1971.

*Louis J. Lefkowitz*, Attorney-General (*Vincent P. Molineaux, Ruth Kessler Toch* and *Thomas P. Zolezzi* of counsel), for Superintendent of Insurance, appellant.

*DeGraff, Foy, Conway & Holt-Harris* (*John E. Holt-Harris, Jr.*, of counsel), for Connecticut General Life Insurance Company, appellant.

*Shearman & Sterling* (*Herman E. Compter, Henry Harfield* and *James B. Keenan* of counsel), for First National City Bank, appellant.

*John R. Davison* for New York State Association of Life Underwriters and others, respondents.

*Royall, Koegel & Wells* (*Mataraso & MacAffer* of counsel), for CUNA Mutual Insurance Society and another, *amici curiae*.

*Roderick C. Sager* (*Frederick W. Read, Jr., Daniel J. Reidy, Vector Whitehorn* and *Donald M. Wilson* of counsel), for

Association of New York State Life Insurance Companies, *amicus curiae*.

COOKE, J. This is an appeal from a judgment of the Supreme Court at Special Term, entered August 20, 1971 in Albany County, which: (1) directed that the Superintendent of Insurance cease taking further action, except cancellation, as to his " Circular Letter No. 14 (1970) " issued November 19, 1970 addressed " To All Insurers Licensed to Write Life and Accident and Health Insurance in New York State " and that he rescind any actions, approvals and opinions in effectuation thereof; (2) declared that said letter and any plans, contracts and orders pursuant thereto are without authority and contrary to law; and (3) restrained appellants from taking or continuing any actions in reliance upon the " Wholesale Life Insurance Standards " in said letter and any related plans, policies and contracts.

On November 19, 1970, the Superintendent issued " Circular Letter No. 14 (1970) " which amended prior circular letters by adding as a group to whom wholesale life insurance could be distributed upon a mass merchandising basis " (b) individual depositors holding interest bearing savings accounts in the same bank or credit union " under which the insured's right to renew his policy may be contingent upon the continuance of such savings deposit. These circular letters, by their nature, were advisory in form and imparted general standards which would have to be met before applications to sell wholesale life insurance would be approved.

Appellants First National City Bank of New York and Connecticut General Life Insurance Company developed a plan for the sale by the latter of life insurance on a wholesale basis to depositors in First National savings accounts, under the terms of which First National would deduct a scheduled amount of the interest earned quarterly on a savings account of a depositor, who wished to be insured, and apply that as a premium for the term life insurance issued by Connecticut General. The amount of coverage would depend on the age of the depositor and the sum of interest the account earned, approximately one half of the interest being credited for premium payments up to the cost of coverage for a maximum of $15,000 of insurance. The plan was approved by the Superintendent on May 28, 1971.

By their petition dated and filed June 3, 1971, respondents sought relief substantially the same as that granted in the judgment under review, it being alleged that the Superintendent was without authority in issuing said circular letter and in

approving said plan of First National and Connecticut General. Special Term, in deciding what it termed " the real issue ", held the plan to be a tie-in scheme violative of subdivision 3 of section 193 of the Insurance Law, as a matter of law.

Said subdivision, in relevant part, provides: " 3. No insurer * * * shall directly or indirectly, or by any of its agents or representatives, participate in any plan to offer or effect any kind or kinds of life insurance * * * in this state as an inducement to, or interdependent with, the purchase by the public of any goods, securities, commodities, services or subscriptions to periodicals, except as provided [in enumerated sections not here applicable]. Nothing in this subdivision shall prohibit payment plans which are otherwise in compliance with this subdivision and this chapter." In proscribing the sale of life insurance as " an inducement to, or interdependent with, the purchase by the public of any goods, securities, commodities, services or subscriptions to periodicals ", it protects against what is commonly known as " tie-in " sale of insurance, but it is expressly stated that " nothing in this subdivision shall prohibit payment plans which are otherwise in compliance with this subdivision and this chapter." To be operative, this statutory enjoinder requires three factors: (1) the sale of insurance as an " inducement " to or " interdependent " with (2) the " purchase " of (3) " goods, securities, commodities, services or subscriptions to periodicals ".

Despite any strained construction that might be attempted, a bank deposit simply is not a purchase (cf. *Shaw* v. *Dreyfus,* 172 F. 2d 140, 142 [C.A. 2d]; *McCartee* v. *Orphan Asylum Soc.,* 9 Cow. 437, 490; *Hoyt* v. *Hoyt,* 195 Misc. 330, 331). The relation existing between a bank and its depositor is that of debtor and creditor and the bank holds the fund subject to its being paid out or withdrawn upon the direction of the creditor according to the terms and conditions imposed by him (*Romero* v. *Sjoberg,* 5 N Y 2d 518, 523; *Sundail Constr. Co.* v. *Liberty Bank of Buffalo,* 277 N. Y. 137, 141).

Nor is the relationship one such as to create a " service ", in the two regards as claimed by respondents: the first, being ministerial services such as safekeeping, record keeping and the like and, the second, the lending out of the depositor's money for him. But this position, too, overlooks the legal effect of the transaction between the bank and its depositor, since the money deposited with the bank belongs to the bank and is not the property of the depositor, nor is there a bailment (*Matter of Delaney,* 256 N. Y. 315, 319; *Matter of Rubinstein,* 169 Misc. 273, 275); and the existing relation is not that of agent and

principal (*Baldwin's Bank of Penn Yan* v. *Smith*, 215 N. Y. 76, 82). Since there is neither '' purchase '' nor '' service '', the plan as approved does not violate the pertinent statute. Although other plans of the type suggested by Circular Letter 14 may be developed and submitted to the Superintendent, their approval would be dependent on their respective features and there is nothing in said letter which contravenes subdivision 3 of section 193.

Respondents' argument that the Superintendent could not approve any plan under Circular Letter No. 14 without first adopting the letter as an official rule or regulation is untenable, in view of the advisory nature of the announcement. It was addressed to insurers of particular types to inform them that certain policies were not of themselves legally objectionable, obviously different from the usual administrative rule which mandates or prohibits certain conduct. Although section 154 of the Insurance Law confers upon the Superintendent the power and imposes the duty of approving or disapproving proposed policies, the official is not required to ordain regulations announcing the types of insurance policies which meet the statutory standards. Section 21, generally, confers the power upon the Superintendent to prescribe official regulations but he is not directed or required to exercise it in the area of policy approval or disapproval.

In view of the conclusion reached, it is unnecessary to consider issues such as the standing of respondents to institute the proceeding or the appropriateness of the remedy.

The judgment should be reversed, on the law, and the petition dismissed.

HERLIHY, P. J., STALEY, JR., SWEENEY and SIMONS, JJ., concur.

Judgment reversed, on the law, and petition dismissed, with costs.