OPINION OF THE COURT
Harold Hyman, J.
In this action the plaintiffs demand judgment against the defendant insurer declaring that the underinsured coverage provided for in the policy issued to Robert M. Jewell and Mary Jewell, the named insureds, be applied to the benefit of the plaintiffs herein. A nonjury trial was held before this court on December 3, 1984, at which time the parties stipulated to an agreed statement of facts as follows:
On August 19, 1979, Kiloh Smith and Dean Passaro were passengers in a motor vehicle owned by Robert M. Jewell and operated with the knowledge, permission and consent of the owner by his son. The Jewell vehicle, on the date of the accident, was covered by a policy of automobile liability insurance issued by Metropolitan Property and Liability Insurance Company with single-limit automobile liability coverage of $300,000. Said *22 policy of insurance provided for qualified insureds underinsured motorist coverage in the amount of $100,000 per person and $300,000 per occurrence.
On the aforementioned date, the Jewell vehicle was involved in a collision with a vehicle owned and operated by Mark Patchin. On the date of the accident, the Patchin vehicle was insured by Boston Old Colony Insurance Company by a policy of automobile liability insurance with applicable policy limits of $10,000 per person and $20,000 per occurrence. Thus the aggregate limits of the Jewell liability coverage and the Patchin liability coverage is $320,000 which exceeds the $100,000/ $300,000 underinsured coverage on the Jewell vehicle.
The collision between the two motor vehicles was due to the fault of the operators of both vehicles, and was due, in no way, to any fault on the part of the passengers, Smith and Passaro. Smith and Passaro were both injured in the accident.
After the commencement of litigation to recover for their personal injuries, Smith and Passaro settled both their personal injury claims with the liability carriers for both vehicles, and for the purposes of this agreed statement of facts, it is to be presumed that all available liability insurance from parties responsible for the happening of the accident have been exhausted, and both liability carriers paid to the injured parties the full amount of their policies; namely, $300,000 and $20,000.
It is also presumed, for the purposes of this agreed statement of facts, that Metropolitan Property and Liability Insurance Company gave its consent to the settlement of the Smith and Passaro claims with respect to the two liability policies, reserving the issue of whether Smith and Passaro are entitled to be paid any underinsured motorist benefits to the courts.
Insurance Law § 167 (2-a) (renum eff Sept. 1,1984, Insurance Law § 3420 [f]) was amended in 1977 to require that persons insured under automobile insurance policies issued in this State are offered the option of purchasing a type of coverage called “supplementary uninsured motorists insurance”, commonly referred to as underinsured motorist coverage. The statute further provides: “Supplementary uninsured motorists insurance shall provide coverage, in any state or Canadian province, if the limits of liability under all bodily injury liability bonds and insurance policies of another motor vehicle liable for damages are in a lesser amount than the bodily injury liability insurance limits of coverage provided by such policy.” (Emphasis added.)
Under their insurance policy with the defendant insurer, the Jewells opted for supplementary uninsured motorist coverage to *23 the $100,000/$300,000 maximum limits provided by the statute. As passengers in the Jewell vehicle, the plaintiffs contend that because the limits of the uninsured/underinsured motorist coverage afforded the Jewells are greater than the $10,000/$20,000 limits of tort-feasor Patchin’s liability insurance, which were fully exhausted, the Patchin vehicle was “underinsured” and the above-quoted supplementary uninsured motorist clause applies in their favor. Plaintiffs argue that their settlement with the drivers of the two vehicles involved in the accident for $320,000 consisting of the full $20,000 limits of the underinsured’s (Patchin) liability insurance and the $300,000 liability limits of the host driver, does not preclude the plaintiff passengers from recovering an additional payment under the uninsured/underinsured motorist provisions of the Metropolitan policy.
In contrast, Metropolitan relies upon a provision in the indorsement contained in the insurance contract providing that the insurer shall set off all sums paid to the claimant by the carriers for the underinsured and insured joint tort-feasor(s) from the policy limits of the uninsured/underinsured motorist benefits. Citing this provision in its policy, Metropolitan takes the position that the injured plaintiffs cannot proceed under the indorsement because their total recovery of $320,000 from the underinsured and insured joint tort-feasor carriers exceeds the $100,000 policy limits of the uninsured/underinsured motorist coverage, and that payment of such additional benefits would thus be duplicative of the compensation received by the plaintiffs in exhausting the liability limits covering both the Patchin and Jewell vehicles. The defendant challenges the plaintiffs’ claim as an attempt to “stack” the underinsured motorist coverage above the sums received from these other sources.
From the above, it appears that a conflict exists between the uninsured motorist law (Insurance Law § 3420 [f]) and defendant’s insurance policy to the extent that the policy affords the uninsured motorist carrier the right to offset from uninsured/ underinsured protection all sums received by the insured from persons jointly or severally liable with the owner or operator of the uninsured/underinsured vehicle.
Insurance Law § 3420 (f) mandates that any provisions contained in a policy issued in accordance with the aforesaid statute shall be construed as if the provisions of the statute were embodied therein. The Legislature did not provide in the statute (in contrast to payments by the Motor Vehicle Accident Indemnification Corporation [Insurance Law § 5210 (b) (2)]) for reduction of underinsured motorist limits by the amount paid by the *24 person jointly or severally liable with the underinsured motorist. Therefore, to the extent that defendant’s policy imposes that which is not imposed by the statute, such imposition at least as far as the supplementary uninsured motorist coverage is concerned is void.
Support for this proposition is found in a remarkably similar case wherein the terms of the supplementary uninsured motorist policy conflicted with the underinsured branch of the uninsured motorist statute (Insurance Law § 3420 [¶] [2]) and were held to be invalid.
In Garry v Worldwide Underwriter’s Ins. Co. (120 Misc 2d 91, affd 101 AD2d 717 [4th Dept]), the policy had a provision which permitted the underinsured insurer to reduce coverage. In other words, if the insurer wrote a supplementary uninsured motorist policy with a limit of $25,000 per person and the offending vehicle had a policy limit of $10,000, then the maximum obligation of the underinsured carrier would be $15,000. The court in Garry upon reviewing the statute as opposed to the policy did not find any statutory authority for the reduction in the coverage limits. It treated the underinsured coverage much the same as an excess policy and held that, pursuant to the statute, the claimant was to be treated much the same as any person who is the beneficiary of excess liability insurance coverage and be entitled to the full amount of the policy after the exhaustion of the primary coverage.
Thus, we have a clear example that, where the underinsured statute is at variance with the policy provisions, the statute must prevail. The law is well settled that where the terms of an automobile liability policy violate a statute providing standard policy provisions for liability policies or limit free force and effect thereof, they are illegal (Travelers Ins. Co. v Russo, 155 Misc 589; 12 Appleman, Insurance, ch 257, § 7049).
Moreover, the defendant’s citation of Matter of Hanover Ins. Co. (Squarzini) (96 AD2d 471) as recognition of such deduction and offset is misplaced because a reading of the decision indicates that the appellate court did not dispose of the issue involving the offset provision, but rather simply rendered the observation that the question of “stacking” insurance coverages is one of law.
The defendant further contends that the statute can scarcely be clearer in conveying the intent that the “exhaustion by payment” provision, mandated as a predicate to the recovery of supplementary uninsured motorist insurance coverage, extends to the total number of vehicles involved in the accident. The *25 statutory language relied upon by defendant appears in the third sentence of Insurance Law § 3420 (f) (2), which states as follows: “As a condition precedent to the obligation of the insurer to pay under the supplementary uninsured motorists insurance coverage, the limits of liability of all bodily injury liability bonds or insurance policies applicable at the time of the accident shall be exhausted by payment of judgments or settlements.”
It is defendant’s viewpoint that the deletion of a phrase such as “applicable to the other vehicle” reflects the intention of the Legislature to require exhaustion of the total proceeds of the underlying insurance policies of all vehicles involved in the accident as a predicate to being eligible for so-called underinsured benefits. While this may be a logical construction if this clause was read apart from other clauses of the statute, it is not when it is read in conjunction with the obligation to pay language in the preceding clause (as previously quoted) which triggers underinsured protection when the insurance policy limits of “another motor vehicle” are less than the limits of the underinsured motor vehicle coverage that apply to the insured. Read together, the clauses requiring payment of underinsured benefits and the exhaustion of coverage show an intent that the claimant is not barred from obtaining underinsured motorist benefits as long as any tort-feasor’s liability policy limits are less than the uninsured/underinsured motorist coverage and are fully exhausted by the injured party. Thus, by the use of the term “another motor vehicle”, the Legislature is presumed to have intended that the limits of the underinsured motorist coverage be compared only to the vehicle or vehicles which the claimant has turned into underinsureds by exhausting the applicable policy limits, regardless of the available coverage from the other offending vehicle or vehicles. Undoubtedly, the use of this definitive terminology should not be rejected as superfluous for it must be presumed to have been inserted in the statute for a purpose (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 231). That such is consistent with the legislative intent is further supported by the memorandum of the State Executive Department in its summary of the provisions of the bill, stating that, “ ‘supplementary uninsured motorists insurance’ * * * would be excess to the liability coverage of the other automobile in the accident” and that, “Thus, by purchasing this option, the insured would obtain the same level of protection for himself and his passengers which he purchased to protect himself against liability to others and would not be limited to the coverage of the other automobile” (1979 McKinney’s Session *26 Laws of NY, at 2446; emphasis added). This concept is consistent with the reasoning of the court in the Garry case (supra), as well as the settled principle in this jurisdiction that the presence of an insured tort-feasor has no effect on the injured party’s right to make an uninsured motorist claim due to the presence of an uninsured tort-feasor (see, Matter of Electric Ins. Co. v Woods, 101 AD2d 840; Matter of O’Brien [Aetna Cas. & Sur. Co.], 33 AD2d 1085; Matter of State-Wide Ins. Co. v Lang, 30 AD2d 974; Matter of Powers [Continental Ins. Co.], 29 AD2d 1041, lv denied 22 NY2d 645).
Holding to the same view as prompted by these plaintiffs and apparently intended by the Legislature, the First Department, in Matter of Colonial Penn Ins. Co. v Salti (84 AD2d 350), while construing the underinsured provisions of a Florida-issued insurance policy (which mirrors our New York statute), enunciates the legal interpretation likely to be given to the New York supplementary uninsured motorist insurance statute if and when it ultimately reaches that appellate level for review. The court noted that the policy provision pertaining to the exhaustion of other insurance must be read in conjunction with the provision defining an “underinsured highway vehicle” as one with respect to the use of which all liability bonds and insurance policies at the time of the accident was “less than the applicable limits of liability under this insurance.” The definitional provision, the court concluded, clearly showed that the provision requiring the exhaustion of other insurance related only to a single vehicle, not to a total number of vehicles involved in the accident.
Insofar as defendant’s suggestion that failure to adopt its interpretation will result in a windfall to every injured claimant who compromises with a solvent adversary, the fact remains that there is nothing in the Insurance Law permitting the underinsured carrier to limit or condition its statutorily imposed liability. Aside from this, “duplication” has always been present when the injured person has other contemporaneous sources of payment, but in the context of this separate and distinct type of optional coverage for which a separate premium is exacted, it appears clear that the major purpose behind the legislation was to allow for supplementation or a form of excess liability insurance coverage after exhaustion of all insurance policies covering the underinsured vehicle.
Based upon the foregoing facts and conclusions of law, judgment is hereby granted in favor of the plaintiffs against the defendant declaring that the underinsured coverage provided *27 for in the policy issued to Jewell be applied to the benefit of the plaintiffs to the extent the amount thus far obtained by plaintiffs from the other sources is less than the full value of compensatory damages to which plaintiffs may actually be entitled. In the event the parties cannot agree as to the amount of damages sustained by these plaintiffs beyond the total sum already recovered, resort to arbitration would be required under the terms of the policy.