**Gertrude DOWNEY and George Downey, Plaintiffs,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant.**

No. 86 Civ. 0525 (CLB).

United States District Court, S.D. New York.

July 22, 1986.

Leonard J. Birbrower, Alan I. Lamer, Birbrower, Montalbano, Condon & Frank, P.C., New City, N.Y., for plaintiffs.

Charles Platto, Steven Lieberman, Cahill Gordon & Reindel, New York City, for defendant.

### MEMORANDUM AND ORDER

BRIEÀNT, Judge.

By cross motions for summary judgment fully submitted on July 7, 1986, this Court is asked to decide whether Circular Letter No. 13, which was issued by the New York Superintendent of Insurance and distributed to insurance companies such as the defendant Allstate Insurance Company ("Allstate"), has the force and effect of law so as to create a private right of action in the insured in the event the letter's directions are contravened.

The facts of this case are as follows. On December 10, 1984, plaintiff Gertrude Downey was injured in an automobile accident caused by the negligence of the other driver. The bodily injury liability insurance of that driver was limited to $10,000 per person, the statutory minimum, while plaintiffs' bodily injury liability limits per person were $100,000. By statutory definition, the other driver was an "uninsured motorist" because his liability limits were less than the liability limits provided by the plaintiffs' insurance policy. N.Y.Ins. Law § 3420(f)(2) (McKinney 1985). That statute, as amended in 1977, provided that an insured motorist could supplement his or her uninsured motorists insurance, from the then statutory limit of $10,000, up to the amount of his or her bodily injury liability insurance limits, not to exceed $100,000 per person and $300,000 per occurrence. At the time of the accident, the Downeys maintained an automobile insurance policy with Allstate that provided the maximum liability coverage of $100,000 per person and $300,000 per occurrence, as well as uninsured motorists coverage of $10,000 per person and $30,000 per occurrence. The Downeys' automobile policy had contained these limits since 1974.

The insurance company for the other automobile settled the claim against it in the full amount of the applicable insurance. Thereafter, on October 18, 1985, Allstate tendered payment of $10,000 on the plaintiffs' claim under the uninsured motorists provision of their own policy.

By this action, the plaintiffs now seek reformation of the insurance policy to include $100,000/$300,000 uninsured motorists coverage or a declaratory judgment that they are entitled to such coverage, although they had never previously requested it. They allege that Allstate had breached a statutory duty to offer this supplementary coverage to its insureds and that therefore these amounts should be implied in the policy to remedy the breach.

Because the plaintiffs' action is predicated on two purely legal questions, i.e., whether Allstate owed the Downeys a statutory obligation to offer the supplementary uninsured motorists insurance and, if so, whether Allstate's communications with the Downeys satisfied that obligation, this action indisputably is ripe for summary judgment. Rule 56, F.R.Civ.P.

■ As a threshold matter, this Court observes that there is no common law duty of an insurance company or its agency to advise a client of coverage not already provided in his or her policy. *See, e.g., Callahan v. American Motorists Ins. Co.,* 56 Misc.2d 734, 289 N.Y.S.2d 1005, 1008 (Sup. Ct.Orange Co.1968). Thus, if the plaintiffs are to prevail, the duty to explain and offer the supplementary uninsured motorists insurance must be imposed by statute, regulation or some other binding state governmental ukase.

■ In 1977, the New York Insurance Law was amended to provide that any policy affording liability insurance for motor vehicle related bodily injuries "shall, at the option of the insured, also provide supplementary uninsured motorists insurance for bodily injury, in an amount up to the bodily injury liability insurance limits of coverage provided under such policy," subject to a statutory maximum of $100,000 per person and $300,000 per occurrence. N.Y.Ins.Law § 3420(f)(2). This insurance would provide coverage to the insured, upon exhaustion by judgment or settlement of the other driver's liability insurance, when the limits of liability of the other driver's bodily injury liability insurance policies were less than the bodily injury liability insurance maintained by the insured. *Id.* Relying on *Passaro v. Metropolitan Property & Liability Ins.,* 128 Misc.2d 21, 487 N.Y.S.2d 1009 (Sup.Ct.Queens Co.1985) and *Garry v. Worldwide Underwriters Ins. Co.,* 120 Misc.2d 91, 465 N.Y.S.2d 483 (Sup.Ct.Erie Co.1983), the plaintiffs argue that the quoted language requires the insurance companies to offer this coverage to the insured. This Court cannot agree.

As elucidated by the legislative history that plaintiffs cite in support of their contention, the statute merely requires that "this new coverage *be made available* in

the voluntary market." Memorandum of State Executive Department, 1977 N.Y. Legis.Ann. at 2446 (emphasis added). In other words, under this statute, no insurance company will be permitted to refuse to provide supplementary uninsured motorists insurance if the insured requests it. If the state legislators had intended any other meaning, they were capable of giving it expression. To infer an ambiguity where none exists in order to justify the plaintiffs' construction would turn the canon of plain meaning on its head.

Nor are the *Passaro* and *Garry* cases instructive. Neither case was addressed to the issue before this Court, and no analysis accompanies the courts' declarations that the statute imposes such a requirement. The dictum upon which the plaintiffs rely in *Passaro* merely prefaces the court's discussion whether passengers are entitled to be paid uninsured motorist benefits under § 3420(f)(2). *Passaro*, 487 N.Y.S.2d at 1010. In *Garry*, the court was asked to consider whether an automobile insurance policy may reduce a claimant's supplementary coverage by the amount he recovered on the other driver's liability policy, even though his damages presumably exceeded the amount of his supplementary coverage. Although the court invalidated that practice "[i]n light of the statutory requirement to offer this sort of supplementary coverage," the court relied on the fact that the insured was not notified of this offset policy and that the coverage purchased did not accurately reflect the amount of proceeds a claimant actually would be able to recover. *Garry*, 465 N.Y.S.2d at 484–85. The essence of the decision was that the offset contravened the statute's requirement that the insurer *provide* the coverage, at the insured's election. That case did not consider the requirement alleged here that the insurer offer it in the first instance. Therefore, this Court is not obligated to accept this dicta as dispositive of this case.

The plaintiffs assert, however, that this requirement has been acknowledged, and indeed amplified, by the Superintendent of Insurance, who had issued Circular Letter No. 13, dated November 3, 1977, to all insurers licensed to write automobile insurance in New York. Addressing itself to the "implementation" of the new uninsured motorists provision and other contemporaneous amendments, the letter informed its readership that "Section 167(2–a) [now numbered Section 3420(f)(2)] of the new statute requires insurers to offer supplementary uninsured (or 'underinsured') motorists coverage to their insureds," and imposed certain notice requirements and deadlines by which such offers must be made. Specifically, the letter read in pertinent part:

Insurers must furnish their insureds with information which provides an adequate explanation of this new coverage. Insurers must also furnish the estimated or approximate costs of the various coverage limits available to insureds, and an appropriate form which the insureds may use to request this coverage.

The opportunity to request this coverage shall be afforded to insureds with policies issued or renewed with effective dates on and after January 1, 1978, and thereafter at subsequent annual anniversary dates. Insureds with policies issued or renewed with effective dates from December 1, 1977 through December 31, 1977 inclusive, must be offered this additional coverage and explanatory information as soon as possible, but no later than February 1, 1978, if such offer was not included when the policy was issued or renewed.

Circular Letter No. 13, at 6 (Nov. 3, 1977).

Relying on this letter, the plaintiffs contend that Allstate, by failing to communicate intelligible information to its policyholders regarding the availability of this supplementary coverage, in effect had failed to "offer" this option as the statute purportedly required. Allstate argues in response that, as a matter of law, no New York insurance law or regulation imposes on an insurance carrier the obligation to offer supplementary uninsured motorists coverage and that, in any event, it had complied with all statutory directions, such

as they were, by sending a detailed notice to all policyholders at the time the supplementary coverage became available and, later, by sending follow-up notices describing the coverage at the end of every renewal period thereafter.

Essentially, therefore, the issue is whether Circular Letter No. 13 possesses the same force and effect as codified insurance statutes and published regulations, such that the directions contained therein are binding on the insurance companies to which they are addressed and give rise to an implied private cause of action in the event of breach. If so, then the Court would be required to consider whether Allstate's communications with the plaintiffs satisfied those requirements in order to determine whether the plaintiffs are entitled to the relief they seek. If not, then plaintiffs' claim must fall.

The Superintendent is empowered by statute to prescribe regulations interpreting the insurance code, N.Y.Ins.Law § 301, to issue orders, *id.* § 302, conduct examinations, *id.* § 309, and to render decisions, subject to judicial review in the form of a New York Civil Practice Law and Rules Article 78 proceeding. *Id.* § 326. Although the Superintendent is vested with broad authority "to interpret, clarify and implement the legislative policy" of insurance statutes, *Breen v. Cunard Lines Steamship Company, Ltd.*, 33 N.Y.2d 508, 511, 355 N.Y.S.2d 333, 311 N.E.2d 478 (1974), the New York Constitution provides that "no rule or regulation" made by him or his department, except as relating to internal management, "shall be effective until it is filed in the office of the department of state." N.Y. Const. Art. IV, § 8. The New York Court of Appeals has construed the term "rule or regulation" to embrace "any kind of legislative or quasi-legislative norm or prescription which establishes a pattern or course of conduct for the future." *People v. Cull*, 10 N.Y.2d 123, 126, 218 N.Y.S.2d 38, 176 N.E.2d 495 (1961); *see People v. Widelitz*, 39 Misc.2d 51, 239 N.Y.S.2d 707, 710–11 (Sup.Ct.Bronx Co.1963).

In *Cull*, the Court affirmed the dismissal of an information that had charged a motorist with exceeding a state speed limit prescribed by a state Traffic Commission order. Finding that the order established "a general course of operation to be effective for the future," the Court refused to enforce it against the motorist solely because the Commission had failed to comply with the New York Constitution's filing requirement. *Cull*, 10 N.Y.2d at 127, 218 N.Y.S.2d 38, 176 N.E.2d 495. The fact that the public had notice of the rule's prescriptions was of no moment, *id.*; the Court reasoned that the requirement was intended to insure a central, definite place where the public could examine the contents of the rule in order to determine its validity and scope, *id.* at 128, 218 N.Y.S.2d 38, 176 N.E.2d 495, and the clear language of the New York Constitution in this regard precluded a contrary holding. *Id.* at 129, 218 N.Y.S.2d 38, 176 N.E.2d 495.

In this case, the plaintiffs seek to enforce the offer and notice requirements of Circular Letter No. 13. Under *Cull*, however, no such administrative pronouncement that purports to assume a legislative or quasi-legislative character and scope may be enforced absent filing. If, as the plaintiffs insist, Circular Letter No. 13 imposes an offer requirement where otherwise none exists, it has stepped beyond the precatory universe that such letters traditionally inhabit, *see, e.g., Feggans v. Reliance Ins. Co. of New York*, 100 A.D.2d 570, 473 N.Y.S.2d 824, 826 (2d Dept.1984); *Allstate Life Ins. Co. v. Superintendent of Insurance*, 99 A.D.2d 278, 472 N.Y.S.2d 346, 349 (1st Dept.1984); *New York State Assoc. of Life Underwriters v. Superintendent of Insurance*, 37 A.D.2d 304, 325 N.Y.S.2d 172, 174 (3d Dept.1971); *Gross v. Reliance Ins. Co. of New York*, 119 Misc.2d 270, 462 N.Y.S.2d 776, 777–78 (Sup.Ct.Kings Co. 1983), and takes the form of a regulation subject to article IV, section 8. As the Court of Appeals observed in *Cull*, "[t]he spirit and design of the [New York] constitutional provision are best effectuated by requiring the administrator, if he wishes the rules and regulations of his agency or

department to be effective, to file them no matter what label is assigned to them." *Cull,* 10 N.Y.2d at 129, 218 N.Y.S.2d 38, 176 N.E.2d 495. This reminder is clearly applicable here, whether it is the Superintendent or a private citizen who seeks enforcement. Therefore, because the New York constitutional filing requirements apparently were not fulfilled, this Court may not enforce the prescriptions of this circular letter as law. *See In Re Midwest Mutual Ins. Co.,* 96 A.D.2d 530, 464 N.Y.S.2d 838, 839 (2d Dept.1983).

This is not to say, however, that such letters have no significant regulatory role. Advisory promulgations by the Superintendent of Insurance may indeed assist the industry in comprehending and implementing legislative directives, and the reasonable interpretations of the Superintendent are and should be accorded some weight. *See Ostrer v. Schenck,* 41 N.Y.2d 782, 786, 396 N.Y.S.2d 335, 364 N.E.2d 1107 (1977). To the extent these letters provide guidance, impart general standards, and introduce predictability in ascertaining insurance department policy should the Superintendent be required to render a decision on a matter, they serve the public and the industry, even while lacking the force of statutory authority. Further, when circumstances so demand, the Superintendent may choose to replace circular letters on a given subject with definitive regulations. *See, e.g., Allstate Life Ins. Co. v. Superintendent of Insurance,* 99 A.D.2d 278, 472 N.Y.S.2d 346, 349 (1st Dept.1984) (promulgating Regulation 93 to supersede collection of circular letters and bulletins imposing geographical limits on locations of insurance agency conferences). However, he has so far chosen not to do so with respect to uninsured motorists coverage. Therefore, the interpretations contained in the circular letter have no binding effect and do not give rise to a private right of action if they are ignored.

The Court having found no statutory or other authority for plaintiff's position, it is not necessary to determine, as is contended here, whether Allstate's actions in fact complied with the circular letter's directions. Plaintiffs' motion for summary judgment is denied. Defendant's motion for summary judgment is granted.

The Clerk shall enter final judgment that all relief shall be denied.

So Ordered.